DANA HARMON *v.* ALONZO J. TYLER.

*(Knoxville.    September Term, 1903.)*

1.  **CONTESTED ELECTIONS.** Contestant cannot file replication stating new grounds after twenty days from election.

    The contestant in a contested election case over the office of judge of the inferior courts, etc., cannot   more than twenty days after the election, file a further pleading in the form of a . replication to the contestee's answer stating new and distinct grounds upon which to contest the election of the contestee, and evidence offered to sustain such charges will not be heard or considered. (*Post, pp.* 21-35.)

    Cases cited and approved:   Black v. Pate (Ala.), 30 So., 438; Loomis v. Jackson, 6 W. Va., 711; Gillespie v. Dion, 18 Mont., 183; Kindel v. LeBert, 23 Col.  385; Ingerson v. Morlow, 14 Ohio St., 568; Bull v. Southwick, 2 N. M., 321; Vigil v. Pradt, 4 N. M., 375; Thompson v. Ewing, 1 Brews. (Pa.), 67; In re Wilson v. Lucas, 43 Mo., 290.

2.  **SAME.** Are statutory proceedings, and the statutes furnish the only remedy.

    Contested election cases over the office of judge, etc., are statutory proceedings, and the statutes under which they are authorized and conducted furnish the only remedy for contesting such elections. (*Post, pp.* 21-25.)

    Code cited and construed:   Secs. 1320-1326 (S.); secs. 1109-1115 (M. & V.); secs. 900-906 (T. & S. and 1858).

3.  **SAME.** Jurisdiction is conferred upon the chancellor and not upon the chancery court, when.

    Jurisdiction of the contested election cases over the office of judge, etc., is not conferred upon the chancery court by statutes (Shannon's Code, sections 1320-1326), but upon the chancellor of the

Harmon v. Tyler.

division in which the circuit, or a part of it is situated, or which is nearest to it, as the case may be, thus creating a special tribunal for the exclusive purpose of hearing and determining this class of election contests, the proceedings of which are summary, and not according to the course of the common law. (*Post, pp.* 22-25.)

Case cited and approved: Wade v. Murry, 2 Sneed, 50.

Code cited and construed: Secs. 1320-1326 (S.); secs. 1109-1115 (M. & V.); secs. 900-906 (T. & S. and 1858).

**4. SAME. Statutes are mandatory and jurisdictional, and must be complied with.**

The provisions of the statutes (Shannon's Code, sections 1320-1326) are mandatory and jurisdictional, and must be complied with, in order to authorize the chancellor, before whom the proceedings in contested election cases over the office of judge, etc., are begun, to hear and determine them. (*Post, pp.* 23, 24.)

Cases cited and approved: Gallagher v. Moore, 12 Heis., 260; Schwartz v. Garfield Co., 14 Colo., 44; Edwards v. Knight, 8 Ohio, 375; Gillespie v. Dion, 18 Mont., 183.

Code cited and construed: Secs. 1320-1326 (S.); secs. 1109-1115 (M. & V.; secs. 900-906 (T. & S. and 1858).

**5. SAME. Statute of limitation barring contests after twenty days applies to amended pleadings.**

The provision of the statute (Shannon's Code, section 1320) requiring a sworn statement of the grounds of contest of election to the office of judge, etc., to be presented to the chancellor within twenty days after the election, is in the nature of a statute of limitation, and bars all contests which are not begun within the prescribed limit; and this construction of the statute applies to all amended or other pleadings, making new charges upon which to contest the election, with the same force as it does to the original bill. (*Post, pp.* 24, 25.)

Harmon v. Tyler.

Code cited and construed: Sec. 1320 (S.); 1109 (M. & V.); sec. 900 (T. & S. and 1858).

**6. SAME. Same. But does not apply to defense of contestee, though it introduces new matter.**

The statute (Shannon's Code, section 1320) limiting the time in which a contest of the election may be instituted has no application to the defense of the contestee to the grounds of contest presented against him, and he is not required to make his defense within the time limited to the contestant, though his defense may in part be an attack on the vote and returns in favor of contestant on the ground of fraud and illegality. (*Post, pp.* 15-17.)

Code cited and construed: Sec. 1320 (S.); sec. 1109 (M. & V.); sec. 900 (T. & S. and 1858).

**7. SAME. Same. Same. Statute giving time for defense, but not limiting the time.**

The provision of the statute (Shannon's Code, section 1321) as to the time of trial of contested election cases over the office of judge, etc., was intended to give the contestee time in which to prepare and make his defense, and not to limit the time in which he may do so; and clearly allows him to make defense after the expiration of the limit in which the contestant is required to present his grounds of contest. (*Post, pp.* 31-35.)

Code cited and construed: Sec. 1321 (S.); sec. 1110 (M. & V.); sec. 901 (T. & S. and 1858).

**8. SAME. Pleading and practice to be prescribed by the chancellor.**

In contested election cases over the office of judge, etc., the chancellor is empowered to prescribe the practice to be pursued in making up the pleadings and presenting the evidence, within the provisions of the statutes (Shannon's Code, sections 1320-1326) conferring upon him jurisdiction of the case. (*Post, pp.* 32, 33.)

Cases cited and approved: Boring v. Griffith, 1 Heis., 446; Blackburn v. Vick, 2 Heis., 376.

Harmon v. Tyler.

9. **JURISDICTION.** Of subject-matter cannot be conferred by consent.

Jurisdiction of the subject-matter cannot be conferred upon a court by consent of the parties litigant. ‐(*Post, p.* 30.)

10. **PLEADING AND PRACTICE.** Amendments after issue not allowed without reason, negligence shown is ground for denial.

The application for permission to amend pleadings, after issue will be denied unless a good reason is given for not presenting the new matter in the original pleading; and certainly the application should be denied, when the amended bill, upon its face, not only fails to state any such reason, but affirmatively shows that none existed, save the negligence of the applicant, and especially when the interest of the parties and the public alike demands that there should be no unnecessary delay in commencing the proceeding. (*Post, p.* 30.)

## FROM WASHINGTON.

Appeal from the HON. HAL. H. HAYNES, Chancellor of the First Chancery Division of Tennessee, sitting in Contested Election Case in Washington County.

ROBERT BURROW, ISAAC HARR, REEVES & REEVES, ISHAM G. LEBOW and C. W. MARGRAVES, for Harmon.

KIRKPATRICK, WILLIAMS & BOWMAN, THOS. CURTIN, JOHN P. SMITH, TIPTON & MILLER, J. O. PHILLIPS, and HUGHES & HUGHES, for Tyler.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This is a proceeding instituted before Hon. Hal. H. Haynes, chancellor of the first chancery division of Tennessee, by Dana Harmon, contestant, a candidate for the office of judge of the first judicial circuit at the general election held August 7, 1902, against Alonzo J. Tyler, contestee, his opponent, who received the certificate of election, to contest his election to that office.

Contestant presented to the chancellor his statement of the grounds of his contest in the form of a bill in equity, properly verified, charging in general terms that contestee Tyler, and himself were candidates for the office of judge of the first judicial circuit at said election, and that he was legally and constitutionally elected to said office, but by means of the fraudulent suppression of the returns of the election in certain districts, the fraudulent alteration of those of others, and the rejection of legal votes cast for contestant in another, it was made to appear upon the face of the returns from the counties composing the circuit that the contestee had received a majority of 102 votes, and was elected to said office, and the certificate of election rightfully belonging to contestant was wrongfully issued to contestee.

Contestant, proceeding to state the specific grounds of his contest, says that upon the full, correct, and legal returns of the election made and certified by the judges and clerks of the various voting precincts of the circuit he had a majority of the votes cast and was duly elected, but that the returns from the twelfth civil district of Hancock county, where he received a majority of 80

votes, those from the second district of Claiborne county, where he received a majority of 52 votes, and those of the sixteenth civil district of Sullivan county, where he received a majority of 13 votes, were fraudulently suppressed or destroyed, and omitted from the vote certified by the election commissioners of those counties to the secretary of state; that the returns of three districts of Greene county, after the same were certified by the officers holding the election, were fraudulently altered by adding to the votes cast for contestee, Tyler, in the second district 20 tallies or votes, in the fifth district 15 votes, and in the eighteenth district 40 votes, whereby it was falsely made to appear upon the face of the returns from these districts that contestee had received 75 votes more than had in fact been cast for him, which were counted and included in the aggregate vote certified to the secretary of state from that county; that in the first civil district of Johnson county, where the uniform ballot law applies, 4 ballots which were legal and should have been counted for contestant were wrongfully rejected upon the pretense that they were marked; and that the total number of votes cast for contestee in Hancock county was fraudulently raised 31, but by whom and in what particular district or districts it was done he is unable to state, but will be able to show the facts in the proof.    No other ground of contest is stated.

The number of votes shown by the returns of the election commissioners of the several counties to have been received by contestant and contestee is then set out in

full, from which it appears that if the charges made in contestant's bill are true, and corrections are made accordingly, he received a majority of the votes cast in the election, and was entitled to the certificate of election and office of circuit judge.

The bill concludes with a prayer that the chancellor designate a suitable place in the judicial circuit to hear the contest, and name the earliest day possible for that purpose; that all orders necessary in the case be made; and that, on the final hearing, contestant be declared to have been legally elected judge of the first judicial circuit of Tennessee.

The chancellor ordered that the case be heard September 30, 1902, at Johnson City, Tennessee, and that a copy of the bill be served upon the contestee at least twenty days before that day.

The parties made and filed with the chancellor September 1, 1902, an agreement in these words:

"In re Harmon v. Tyler, Election Contest.

"In this case it is agreed by counsel representing the parties, respectively, as follows:

"(1)    That contestee shall have until and during Saturday, September 6, in which to file a reply to contestant's petition.    In the event contestee, in his said answer, set up new matter and ask for affirmative relief, contestant shall have until and during Saturday, September 13, 1902, in which to make defense thereto, so as not to delay the hearing.    Contestant does not agree that contestee has the right to set up new matter or to

ask affirmative relief after the expiration of twenty days from the election of August 7, 1902, and this question is expressly reserved by contestant.

"(2)    The contestant shall execute a bond in the sum of $250.00, conditioned for payment of cost in event of failure to prosecute successfully, and contestee shall give bond of like character if his petition asks affirmative relief.

"(3)    The parties, respectively, shall have the right to take depositions in as many, but not more than four different localities at the same time, upon proper notice thereof.

"Either party may, upon five days' notice, take depositions in the cause at any time after the fourth instant.

"It is further agreed that all depositions, orders, etc., be sent to the clerk and master of the chancery court at Johnson City, who will file same, together with all other papers in the cause, and shall make note of same upon the rule docket, and in all matters pertaining to this cause he will have the same power he has in a chancery cause."

Contestee filed his answer September 6, 1902, admitting that he and contestant were opposing candidates in the preceding August election for the office of circuit judge; that the returns certified to the secretary of state showed a majority in his favor, and that he had received a certificate of election; and charging that he had, in fact, received a majority of the legal votes cast

in the election, and was justly entitled to the office, and denying all charges of fraud.

Contestee, answering, further denies that the contestant received the number of legal votes shown by the returns from the several counties composing the circuit to have been cast for him, and charges that said returns were false and fraudulent in that large numbers of illegal votes were cast for contestant by nonresidents, repeaters, voters subject to the payment of poll taxes who had not paid them for the previous year, or who failed to present satisfactory evidence of such payment to the judge of the election, or voted upon forged receipts, and by persons who were otherwise disqualified and not entitled to vote in said election, and fraudulently counted for him; and that ballots which had been cast for contestee were fraudulently taken from the boxes, and others in favor of contestant wrongfully substituted for them; and that other ballots cast for contestee were fraudulently and corruptly called and counted for contestant; and that all these wrongs were done and permitted to be done by the friends and supporters of contestant, who were, in some instances, the officers holding the election, and for his benefit.

These charges are specific, stating in detail the particular voting precinct affected, the nature and character of the fraudulent practices there committed, the number of the several kinds of illegal votes that were cast and counted for contestant, and of those fraudulently placed in the ballot boxes and counted for him,

and those cast for contestee and fraudulently and falsely called and counted for contestant, in each of said precincts.

The aggregate of the votes that are attacked by contestee, if deducted from the number shown by the returns to have been received by contestant, would so reduce it that contestee would still have a majority over him, conceding the charges of the bill to be true, and correcting the returns as prayed by contestant.

The answer concludes with a prayer that the polls attacked be purged of the illegal votes cast and counted for contestant, and other proper corrections in the returns be made, and that contestant's petition be dismissed, and contestee adjudged and declared to have been duly elected to said office and authorized to assume its duties. It was verified by the oath of the contestee, and a bond to secure costs was also filed by him.

On September 13th contestant, by motion to dismiss and demurrer, in which this answer is called a "cross bill," challenged the right of contestee to attack the legality of votes which had been received or counted by the election officers for contestant, because said pleading was not filed within the limit of twenty days after the election, provided by the statute authorizing contests of the election of judges of the circuit court; that contestee was estopped from attacking the returns upon which he had received a certificate of election; and that

his defense should be confined to meeting the charges made in contestant's bill, which were overruled.

Contestant then filed a further pleading, styled an "answer," containing a denial of the charges of fraud, and this statement:

"Contestant was content to rest this case, and his right to the office of circuit judge, upon the election returns as made and certified by the officers who held the elections in the various voting districts throughout the first judicial circuit, but he does not shrink from a full, free, and fair investigation of all charges of fraud or illegality that can be made in this contest. He charges that in every county in the circuit a majority of each of the board of election commissioners were the active supporters of contestee, and in nearly every instance they appointed friends and adherents of contestee as judges, officers, and clerks to hold the election, so that if there was any fraud, illegality, or irregularity at any polling precinct, it was done while the polls were under the management and control of the friends of contestee.

"Contestant did not seek to go behind the election returns in his notice of contest, to show the wholesale frauds committed by the partisans of contestee. He hesitated to open up that wide field of investigation, not because of any fear of the result, but because of the heavy expense that would attach to such an investigation."

He then proceeded to charge further and new grounds

of contest, consisting of fraudulent -and corrupt prac-
tices claimed to have been resorted to in some forty-
eight voting precincts of the several counties compos-
ing the circuit, by the election officers and others,
friends and partisans of contestee, affecting more than
1,000 votes alleged to have been illegally cast and
counted for contestee, and many legal votes claimed to
have been cast for contestant, and wrongfully counted
for contestee, the specifications being similar to those
made in the answer of contestee, and concludes with a
prayer that the returns in the districts attacked be
purged of the illegal votes cast for contestee and cor-
rected, and contestant be decreed to have been legally
elected, and for general relief.

On September 17th contestee moved to strike this
pleading from the file upon the ground that the same
was in effect an amendment to the original statement
of grounds of contest, attacking the election of contestee
upon new and additional grounds more than twenty
days after the election, the limit provided in which
such contests must be commenced. The chancellor also
overruled this motion, holding that the pleading was
allowable as a replication to the contestee's answer, and
that it concluded the pleadings in the case.

The case was heard upon the issues made in these
pleadings and the evidence introduced by the parties,
upon all of which the chancellor found and adjudged
that most of the grounds of contest charged in the or-
iginal bill filed by contestant August 22, 1902, and a

considerable portion of those made by both parties in the subsequent pleadings, were sustained by the proof, and found that a large number of fraudulent and illegal votes were cast and counted for both contestant and contestee, which he deducted from the returns in their favor, respectively, and upon the returns thus set up, corrected, and expurgated, decreed that the contestee had received a majority of 119 votes over the contestant, and was duly and lawfully elected. From this decree both parties have appealed, and assigned errors.

The first questions to be disposed of are those of jurisdiction and procedure, raised by the parties in the progress of the preparation of the pleadings before the chancellor, and the decision of them will in a large measure be determinative of the case. These contentions may be stated under two heads, as follows:

(1) Contestant insists that contestee must be confined in his defense to a denial and disproval of the charges made in the original bill, and that in no event can the charges of fraud made in his answer be considered, because the answer was not filed with the chancellor within twenty days after the election, the limit fixed by the statute for the commencement of a contest of this character.

(2) Contestee contends that the provision of the statute requiring the statement of the grounds of contest to be presented within twenty days after the election is jurisdictional, and a limitation upon actions of this character, and that new grounds of contest pre-

sented, by amendment or otherwise, after the time allowed has expired, are barred, and for this reason the charges made in the amended pleading of contestant must be disregarded.

The contestant, of course, insists that he had the right, with the permission of the court, to amend his bill, and present further grounds upon which to contest the election at any time; and the contestee, that he had the right to show in his defense, in any way authorized by the facts, that contestant was not elected, and that he had at least twenty days after service of copy of grounds of contest in which to make his defense.

If the contestant's contentions are sound, we have only to consider whether the averments of his original bill, or statement of grounds of contest, are sustained by the proof, as all other defenses than a denial of those will be excluded; while, if contestee's contentions are sustained, we must go further, and consider the charges of fraud made in his answer, but not those made in what is called by the chancellor the "replication" of the contestant.

We will not consider these questions in the order they arose in the progress of the case, but will first dispose of those affecting contestant's pleadings, which is the more convenient, and we think logical, order.

Then did the chancellor err in allowing contestant, more than twenty days after the election, to file a further pleading in the form of a replication to contestee's answer, stating new and distinct grounds upon which

to contest the election of the contestee, and hearing and considering proof offered to sustain these charges? We think he did.

Contested election cases of this character are statutory proceedings, and the statutes under which they are authorized and conducted are to be found in the Code, sections 900-912, inclusive (Shannon's Ed., sections 1320-1332). The sections bearing upon the questions now under consideration are as follows:

"Sec. 1320. Should a candidate for judge of the circuit, common law and chancery, or criminal court, or for the office of district attorney, desire to contest his election, he shall, within twenty days after such election, present a sworn statement of the grounds of contest to the chancellor.

"Sec. 1321. The chancellor shall thereupon appoint a day of trial, not less than thirty or more than fifty days from the day of presentation of said statement, and a place of trial at some point within the circuit in which the election was held, and shall indorse the same on said statement, and cause a sheriff or constable of the circuit or district to serve a copy of the same on the person whose election is contested, or to leave the same at his usual place of residence at least twenty days before the trial, and make a return to him of said service.

"Sec. 1322. The testimony in such contest may be taken orally, or in deposition, upon such notice as the chancellor may prescribe, and the chancellor may make all necessary orders in relation to the transmission of

the poll books in the election to the place of trial, or in relation to any other matter required in the contest.

"Sec. 1323. The chancellor, having heard the testimony and determined the contest, shall send a certified copy of his decision, giving a statement of the legal votes cast for each of the contesting parties to the governor, who shall issue a commission to the person elected."

"Sec. 1326. Either party may have an appeal to the supreme court, and said appeal shall be governed in all respects as an appeal from the chancery court."

These statutes furnish the only remedy for contesting the election of judges of the chancery, circuit, or other courts of original jurisdiction in this state. They do not confer jurisdiction of these cases upon the chancery court, but upon the chancellor of the division in which the circuit, or a part of it, is situated, or which is nearest to it, as the case may be; thus creating a special tribunal for the exclusive purpose of hearing and determining this class of election contests, the proceedings of which are summary, and not according to the course of the common law. *Wade* v. *Murry,* 2 Sneed, 50.

Their provisions are jurisdictional, and must be complied with in order to authorize the chancellor, before whom the proceedings are begun, to hear and determine them. *Gallagher* v. *Moore,* 12 Heisk., 260; *Schwartz* v. *Garfield County,* 14 Colo., 44, 23 Pac., 84; *Edwards* v. *Knight,* 8 Ohio, 375; *Gillespie* v. *Dion,* 18 Mont., 183,

44 Pac., 954, 33 L. R. A., 703; McCrary on Elections, section 99.

Therefore, when one desires to contest the election of a chancellor, judge, or district attorney, he must comply with these statutes, the first provision of which requires that within twenty days after the election a sworn statement of the grounds of contest be presented to the chancellor of the division. This provision of the statute is mandatory, and, as we have seen, jurisdictional. It is also in the nature of a statute of limitation, and bars all contests which are not begun within the prescribed limit. Jurisdiction is only conferred upon the chancellor when the sworn statements of the grounds of contest are filed with him within twenty days after the election was held, and, when filed after that period, he is without authority to hear the contest, and it is forever barred.

We also think that this construction of the statute applies to all amended or other pleadings, making new charges upon which to contest the election, with the same force it does to the original bill. The statute requires all the grounds of contest to be filed within the time limited. Such is its plain meaning and intent. The legislature has made no provision for extension of the time by allowing amendment, and the law makes none. It considered twenty days sufficient time in which to obtain all information necessary to begin the contest, and it was ample in this case, as contestant says he knew all the facts when he filed his original bill.

The evident purpose of the legislature in creating a special tribunal, with no other jurisdiction, to try these contests, and requiring them to be promptly instituted and speedily heard and determined, was to prevent the strife and animosities which necessarily attend public elections from being continued in the courts, and to prevent those whom the people have elected to the offices from being deprived of their possession, and denied the right to exercise the functions and enjoy the emoluments of the office, and from being harassed, and disturbed in the discharge of their public duties, by prolonged litigation. These wholesome and just purposes would be entirely defeated under any other construction. If the original contest, or a new one by an amended or supplemental pleading, could be commenced a month after the expiration of the time prescribed, it could be done at any later period, and the litigation in this way prolonged, in many instances until the term of office had expired.

The chancellor therefore should not have allowed the amended pleading of contestant, presenting additional grounds of contest, to be filed. This pleading is styled "an answer to contestee's answer," and was allowed to be filed as a replication to that answer. It contains a denial of the allegations of the answer of contestee, but the greater part of it is devoted to charges of grounds of contest for the first time brought forward, and of an entirely different character from those stated in the original bill. It is sworn to, and concludes with a prayer

for appropriate relief.   It is, in substance, a new bill containing new charges upon which to contest the election of contestee, and submitting new issues to be tried, and not an amendment of the charges already made. It is immaterial that it is styled "an answer."   Courts will always give pleadings their proper character and effect.   It came too late, and should not have been allowed to be filed for any purpose.

While this precise question has not been hitherto decided by this court, it has been in other states having similar statutes providing for election contests, and always as here held.

In the case of *Black* v. *Pate* (Ala.), 30 South., 438, it is said by Sharp, J.: "Contests of elections being unauthorized except by statute, any material departure from the statutory mode of instituting and conducting such contests is likewise unauthorized.   This is especially true in respect of the limitation of time contained in this statute regulating contests for the office of sheriff, which provides, 'The person contesting must file in the office of the judge of probate of the county in which the election was held, within fifteen days after the result of the elections has been declared, a statement in writing of the grounds of contest verified by affidavit.'   Code, section 1697.   This and several other provisions of the statute are made to hasten the termination of such contests, in view of the fact that it is important to the public as well as the parties that the office be administered by the person rightfully entitled

Harmon v. Tyler.

·thereto. Introducing new grounds of contest after the ·prescribed time would naturally be productive of sur-prise to the contestee, and of disadvantage to him, un-less the trial be postponed to enable him to meet such ·grounds. Hence the legislature, assuming that fifteen ·days would be sufficient for one acting with diligence to learn of matters invalidating a declaration of elec-tion, has made no provision for filing grounds of con-test after fifteen days therefrom. As originally exhib-ited, the present petition preferred only two grounds ·of contest: First, that illegal votes were given to the contestee, which, if taken from him, will reduce the number of legal votes given to the contestee; second, that he is ineligible. The amendment averring fraud ·on the part of election officers, not having been offered before the lapse of fifteen days from the declaration, was improperly allowed."

In *Loomis* v. *Jackson,* 6 W. Va., 711, where the stat-ute created a special tribunal like ours for the trial of ·this class of cases, it is said: "This court is one of limited jurisdiction, confined to the trial of one single ·case, and becomes *functus officio* as soon as that cause is determined. It possesses no inherent power, and it ·can be directed in the exercise of its authority only by the provisions of the statute creating it.

"Possessing no common law jurisdiction, it can not thence derive the incidental power of amendment. The statute creating it does not expressly grant to it such power, but on the contrary, by reserving to the parties

the right to supply defects to a certain limited extent, upon certain conditions and within a specified time, that power, by very strong implication, is withheld from this court. The eighth section of chapter 131 of the Code [of 1868], authorizing the amendment of the pleading in certain cases, can not apply to this court, for the courts there referred to can impose conditions upon the party asking leave to amend, by payment of costs, or granting a continuance, if thereby made necessary, which this court can not do."

In *Gillespie* v. *Dion*, supra, it is said: "Doubtless, amendments may be made to a statement sufficiently good to enable the proceeding to be considered, providing such amendments do not essentially change the grounds of the contest, or set forth grounds where none were originally stated; but, where the amendments are so radical as to virtually initiate a contest where really no ground at all has been specified in the original statement, we are inclined to hold they ought not to be permitted after the ten days allowed by law for commencing proceedings have expired."

The case of *Kindel* v. *Le Bert*, 23 Colo., 385, 48 Pac., 641, 58 Am. St. Rep., 234, is directly in point. Campbell, J., after reviewing all the cases construing similar statutes, says:.

"So far as our investigation has gone, it is only in the Iowa case, supra [*Brown* v. *McCollum*, 76 Iowa, 479, 41 N. W., 197, 14 Am. St. Rep., 238]—if, indeed, that case goes to the length—where an amendment has been

permitted setting up a new and distinct cause of action. In all of the other cases the amendments were made for the purpose of correcting or perfecting statements in causes of action contained in the original pleading. Upon principle, and in the light of these authorities, we are of the opinion that where the statute itself provides for amendments, but does not define their scope, those relating to formal matters, or which are made for the purpose of perfecting and completing causes of contest comprehended within the original statement, may, upon a proper showing, and if applied for within a reasonable time, be permitted; but, in the absence of such permissive statute, not even amendments of this nature can be made, and, unless there is a provision expressly so providing, no new cause of action or contest can be set up by way of amendment.

"At the common law, neither in an action at law nor in a suit in equity could an amendment to a pleading of a party instituting the suit be made which introduced new cause of action."

There are many other cases that we have not had access to, which appear, from the digests and in other works in which they are cited, to be in full accord with those above referred to. Among them are *Ingerson* v. *Morlow*, 14 Ohio St., 568; *Bull* v. *Southwick*, 2 N. M., 321; *Vigil* v. *Pradt*, 4 N. M. (Johns.), 375, 20 Pac., 795; *Thompson* v. *Ewing*, 1 Brewst. (Pa.), 67; In re *Wilson* v. *Lucas*, 43 Mo., 290.

The agreement made by the parties can not alter the

case. It is a question of jurisdiction, and jurisdiction of the subject-matter can not be conferred upon a court by consent.

Again, contestant says in his amended or new bill that he was fully informed of the facts charged in it at the time he filed his original statement of grounds of contest, and that he declined to open that wide field of investigation, not because of any fear of the result, but because of the heavy expense which would be incurred thereby.

If an amended pleading presenting new grounds of contest could be permitted in a proceeding of this character, this admission of want of diligence by the contestant would make it improper to allow it in this case. It is a familiar rule of practice that a party applying for permission to amend his pleadings after issue must give a good reason for not presenting the new matter in the original pleading, and certainly the application should be denied when the amended bill, upon its face, not only fails to state any such reason, but affirmatively shows that none existed, save the negligence of the applicant, and especially when the interest of the parties and the public alike demands that there should be no unnecessary delay in commencing the proceeding.

Contestant exercised his own judgment, confessedly with full knowledge of all the facts, in selecting the grounds upon which he would attempt to impeach the election of contestee, and voluntarily assumed all the risks incident to the policy he elected to pursue, and he

Harmon v. Tyler.

can not now be heard to complain of the result, or ask another trial upon other issues. The authorities cited, we think, fully sustain us in the conclusion that further grounds of contest can not be brought forward by amendment more than twenty days after the election, and therefore the amended bill of the contestant, and all the proof taken in support of the charges made in it, must be disregarded in the further consideration of the case.

This provision of the statute (section 1320), however, has no application to the defense of the contestee to the grounds of contest presented against him. He is not contesting the election. There is no contest for him to make. The statute does not, in terms or by implication, require him to make his defense within the time limited to the contestant. Its language is that a "candidate who desires to contest the election shall file a statement of his grounds of contest within twenty days after such election." This can not be construed to apply to a candidate who has received a majority of the votes cast in the election, on the face of the returns, and has been awarded a certificate of election, and thus has a *prima facie* title to the office. The contest must be instituted by the candidate who, upon the face of the returns, was apparently defeated, and has been denied a certificate. The statute allows him to contest the election of his apparently successful opponent, but requires him to do so within a limited time. When he has done this in a proper manner, the special tribunal

created to try the contest has acquired jurisdiction of the case, and nothing that the contestee can do, or fail to do, can affect it. There is no provision for filing a cross bill, and none is necessary or allowable. There can be no cross contest, because only one certificate can be awarded, and, the contestee having received it, there is no other person apparently elected whose right to the office can be contested. The pleading filed by the contestee in this case is an answer, and the fact that he filed a cost bond does not change its character.

The provision of section 901 providing that the date of trial shall not be less than thirty days from the time of presentation of grounds of contest, and that a copy of the statement, and indorsement of the chancellor thereon fixing the time and place of trial, shall be served on contestee at least twenty days before the trial, was intended to give him time in which to prepare and make his defense, and not to limit the time in which he may do so, and clearly allows him to make defense after the expiration of the limit in which contestant is required to present his statement of grounds of contest, for the latter may delay filing his statement with the chancellor until the nineteenth day after the election.

While the statute does not in terms require any written pleading to be filed by contestee, we think that orderly procedure and fairness to contestant require that, within a reasonable time before the trial, he present his defense in some tangible form, so that the

chancellor may be apprised of the issues to be tried, and the contestant have notice of the proof to be offered by contestee, and time in which to produce his evidence in rebuttal.

Where contestant fails to show upon the face of his statement of grounds of contest that for want of merits, or any other reason, he can maintain his action, defense can be made by motion to dismiss or by demurrer; but when the contestee desires to put in issue the allegations of fact made by contestant, or to allege new matter proper for his defense, an answer is evidently the proper pleading in which to do so, and should be filed. This, however, is all within the control of the chancellor, who can designate the practice to be pursued in making up the pleadings and presenting the evidence, within the provisions of the statute conferring upon him jurisdiction of the case. *Boring* v. *Griffith,* 1 Heisk., 456; *Blackburn* v. *Vick,* 2 Heisk., 378.

We are, therefore, of the opinion that the contestee can, by an answer filed twenty days after the election, challenge the official returns of the election because of fraudulent and illegal votes cast and counted for contestant, or show that he was deprived of legal votes cast for him, or upon any other grounds upon which said returns may be impeached and corrected at the instance of the contestant. Contestant in his bill charges that he was elected and entitled to the office in question, and sets forth the vote that was returned, and which should

have been returned, for him, to support the charge. This is a material averment, without which the pleading would be demurrable, and there could be no recovery of the office. Contestee has the right to show that it is untrue, and there is no more conclusive way of doing this than by alleging and proving that ballots counted for contestant were cast by parties who were not qualified voters, or were cast for contestee and fraudulently counted for contestant, or other fraudulent practices on the part of the election officers and supporters of contestant, which show that he did not receive a majority of the legal votes in said election, and was not duly elected.

If the contention of contestant was sound, a candidate defeated by a small majority on the face of the returns, who could point out defects in his opponent's vote slightly in excess of the apparent majority returned in his favor, could recover the office, although there was a greater infirmity in the returns in his favor, which, when cured, would show that he had failed of election by a large majority. All he would have to do to accomplish this would be to delay filing his statement of grounds of contest until the last day of the time allowed in which to do so, when it would be impossible for contestee to make any other defense than a denial of the charges made by the contestant. No such result was contemplated by the lawmakers, and the statutes are not susceptible of a construction which would

work such injustice and defeat the purposes for which they were enacted.

Nor is contestee estopped from attacking the returns in this election because he holds a certificate based upon them. The attack is made upon the returns in favor of contestant, not upon those in favor of contestee, and under which he claims the office. The contest then must be heard upon the issues made by the original bill of the contestant and the answer of contestee. We have carefully considered the vast volume of evidence in the record pertinent to these issues, and upon the whole record, after correcting the returns in favor of both candidates, as authorized by the preponderance of the evidence produced in support and refutation of the numerous contentions of the parties, find that the contestee received a majority in said election of 262 votes over the contestant, and was duly elected and entitled to the office in controversy. A decree will be entered in accordance with this opinion.