HUMPHRIES *v.* McAULEY.

[No. 25,501. Filed October 27, 1933.]

*Lennington & Lennington,* for appellant.

*White & Haymond, Walter D. White* and *Charles F. Reed,* for appellee.

HUGHES, J.—The appellant, John C. Humphries, brought this action to contest the election of the appellee, Harry McAuley, to the office of sheriff of Delaware county, at the general election held on November 2, 1926.

There was a recount of the votes and a hearing before the board of commissioners of Delaware county and the office given to appellee. The appellant then appealed to the superior court of Delaware county where he was unsuccessful and the appellee was declared duly elected to the office of sheriff of said county. The appellant is now asking that the court reverse the lower court.

At the request of appellant special finding of facts and conclusions of law were made and filed.

The assignments of error are as follows: (1) That

the court erred in sustaining the objection of the appellee to the filing of the amended complaint tendered by the appellant; (2) that the court erred in sustaining the objection of appellee to the filing of the supplemental complaint tendered by the appellant; (3) that the court erred in its conclusions of law upon the special findings of fact; (4) that the judgment is not fairly supported by the evidence in the case; (5) that the decision of the court is not fairly supported by the evidence in the cause; (6) that the judgment is against the weight of evidence; (7) that the decision of the court is clearly against the weight of evidence; (8) that the court erred in overruling the motion of appellant for a venire de novo; (9) that the court erred in overruling appellant's motion for a new trial.

The motion for a new trial consists of more than 100 reasons and is too lengthy to set out in this opinion.

The first error relied upon by the appellant is that the court erred in refusing the appellant to file an amended complaint or petition.

Section 7610, Burns 1926, provides four causes for contest of an election as follows:

"First. For irregularity or malconduct of any member or officer of the proper board of judges or canvassers.

"Second. When the contestee was ineligible.

"Third. When the contestee, previous to such election, shall have been convicted of any infamous crime, such conviction not having been reversed nor such person pardoned at the time of such election.

"Fourth. On account of illegal votes."

The appellant first relied upon the first cause for contest as above set out. He relied upon the irregularity of the election boards of Delaware county in counting mutilated and void ballots in favor of the defendant and in counting the votes cast on a machine which is claimed

was erroneous. In the original petition there was no charge of persons voting illegal votes nor of any illegal votes having been cast. During the trial of the contest it appears that the contestor sought to introduce evidence showing that illegal votes had been cast. The court refused to admit this evidence for the reason that no issue had been tendered upon this ground which is the fourth reason as above set out. The contestor, after the court refused to admit the evidence of illegal voting, asked to file an amended petition containing the reasons set out in the fourth cause for contest as provided by statute. This amendment was offered after the time had expired for filing a petition to contest. The evidence offered went to the method in which the ballot was procured.

The contestee objected to the amended petition being filed on the ground that it stated new grounds of contest after the expiration of the time for filing a contest and that the contestor was confined to the reasons assigned in his original petition.

Was the ruling of the court upon this proposition correct? In our judgment it was.

In the case of *Borders* v. *Williams* (1900), 155 Ind. 36, 57 N. E. 527, the court said: "We perceive no ground for the contention that in contested election cases the procedure is more liberal than in the trial of other civil causes with respect to the issues and evidence. The statute requires the contestor specifically to state in his complaint the grounds of contest relied upon. That he shall therein state all the grounds he depends upon is emphasized in the provision that requires him to serve a copy of the specifications upon the contestee, manifestly that the contestee may have timely notice of the particular facts against which he is called upon to defend his title. We concede that under proper issues the controlling question in such cases is, which

of the contestants has received the greater number of legal votes? But we are not prepared to grant that the statute and settled rules of practice may be so far disregarded as to hold that a single ground of contest properly pleaded is sufficient to open up to adjudication other substantially different grounds without plea. Such a rule would invite loose and imperfect pleading, and give no warning to a contestee before trial of the real grounds upon which his case was liable to be determined."

The provision of the statute, section 7612, Burns 1926, which provides that whenever any elector shall choose to contest an election, he shall file with the auditor of the proper county, within ten days after such person has been declared elected, a written statement specifying the grounds of contest, verified by the affidavit of such elector, clearly shows that the particular cause relied upon for the contest is the one that the contestor will be bound by. The ground for contest must be specified within ten days after the person has been declared elected. The contestee is entitled to know before entering upon the contest the grounds upon which the contest is to be made so that he may be prepared to meet the charges. If, after the ten days have expired, the contestor were permitted to amend his petition and assign other causes for contest there would be no use for the limitation of time as fixed by the statute. It would be a useless provision and of no force and effect. We are not without authority upon this proposition.

In the case of *Harmon* v. *Taylor* (1903), 112 Tenn. 8, 83 S. W. 1041, the court said: "Introducing new grounds of contest after the prescribed time would naturally be productive of surprise to the contestee, and a disadvantage to him, unless the trial be postponed to enable him to meet such grounds. Hence, the Legislature, assuming that fifteen days would be sufficient for

one acting with diligence to learn of matters invalidating a declaration of election, has made no provision for filing grounds of contest after fifteen days therefrom.. As originally exhibited, the present petition preferred only two grounds of contest: First, that illegal votes. were given to the contestee, which, if taken from him, will reduce the number of legal votes given to the contestant; second, that he is ineligible. The amendment averring fraud on the part of election officers, not having been offered before the lapse of fifteen days from the declaration, was improperly allowed." The foregoing opinion was predicated upon a statute very similar to the one involved in the instant case. And again in the case of *Kindel* v. *Le Bert* (1897), 23 Colo. 385, 48 Pac. 641, 58 Am. St. Rep. 234, the proposition involved in the instant case was thoroughly discussed and held that such an amendment as here proposed could not be set up after the limitation of time as provided by statute.

"The case of *Batterton* v. *Fuller* (1894), 6 S. D. 257, 60 N. W. 1071, involving an election contest, held that. an amendment so radical as to virtually constitute a new contest cannot be permitted after the time limited for instituting the proceedings has expired."

We also have decisions of our own court which in our. judgment sustain the ruling of the lower court on the question here presented. In the case of *English* v. *Dickey* (1891), 128 Ind. 174, 27 N. E. 495, 13 L. R. A. 40, the court quotes with approval the language found in the case of *Bull* v. *Southwick* (1882), 2 N. M. 321, as follows: "It is also my opinion that the very object of. the statute in regard to the pleading and practice in contested election cases, is to afford, and at the same time to compel the observance of, a speedy mode for conducting and terminating such cases. . . . . These statutory provisions as to the time of filing and serving

the notice of contest, answer and reply are, in effect, statutes of limitation, taking from the judge all discretion as to extending the time."

It is the law in this state that an amendment of a complaint which amounts to a restatement of the original cause of action relates back to the filing of the original complaint, but where the amended pleading states a different cause of action from that set up in the original complaint, it cannot be made to relate back to the filing of the original complaint, so as to defeat the operation of the statute of limitations. And where the cause of action stated in the original complaint, and that stated in the amended complaint, do not correspond, either in their essential elements or in the evidence necessary to support each, the causes thus stated are different.

In the instant case the original petition and the amended petition do not correspond in their essential elements or in the evidence necessary to support each. *Blake* v. *Minker* (1894), 136 Ind. 418, 36 N. E. 246; *Oolitic Stone Co.* v. *Ridge* (1910), 174 Ind. 558, 91 N. E. 944.

The court did not commit error in refusing to permit the filing of either the amended or supplemental petition.

The court, at the request of appellant, made a special finding of facts which consisted of fifty-seven in number. We have carefully reviewed the evidence in this case and in our judgment the evidence fairly supports the findings.

It is well settled that the findings made by a trial court as to questions of fact will not be disturbed when there is evidence to support such findings. *Ilo Oil Co.* v. *Ind. Nat. Gas Co.* (1910), 174 Ind. 635, 92 N. E. 1, 30 L. R. A. (N. S.) 1057, and many cases cited.

Finding No. 8 found: That said county board of canvassers declared the contestee, Harry McAuley, had received the highest number of votes for the office of sheriff of Delaware county, Indiana, and declared said contestee to be elected to the office of sheriff of Delaware county, Indiana.

Finding No. 9 found: That after the canvass of the votes by the county board of canvassers the contestor, John C. Humphries, filed his petition in the auditor's office of Delaware county contesting the election of the contestee; that proper steps were taken for a recount and that the recount commissioners found and determined that the contestor, John C. Humphries, had received 8,509 legal votes and that Harry McAuley had received 8,585 legal votes.

Finding No. 49 found: That in precinct number 36 both ballots and machines were used in voting; that 498 persons voted or attempted to vote in the said precinct and that there were 498 names only on the poll books as recorded by the poll clerks of the election board of said precinct. The court further finds that the contestor received 56 votes by ballot in said precinct and 138 votes by machine, or a total of 194 votes in said precinct 36. The court further finds that 5 persons voted on the machine who did not vote or attempt to vote for the office of sheriff, as shown by the evidence in this cause. The court further finds that there were 17 ballots upon which no vote for sheriff was indicated and that there were 7 mutilated ballots cast at said election which were not counted for either candidate, contestor or contestee. That there were a total of 173 ballots used at said precinct, leaving 325 persons who voted or attempted to vote by machine and that 138 of these voted for the contestor, Humphries, and that at least 5 persons who voted by machine did not vote or attempt to vote for the office of sheriff, thus leaving a total of 182

votes by machine untabulated. The court finds that the machine used in precinct number 36 was in perfect order and had been tested as required by law at the beginning of the voting in said precinct. The court further finds that at some time after the opening of the polls and prior to the tabulation of the vote by the election board of said precinct the dial or counting apparatus number 23 on said machine, being the dial which registered the votes for the contestee, McAuley, became broken in some manner not shown by the evidence, and that by reason of such breakage said dial failed to register correctly and did not correctly register and tabulate the vote cast on said machine for the contestee. The court finds that said breakage and irregularity in said machine as herein set out was without the fault or knowledge of either the contestee or contestor in this case; the said contestor, Humphreys, received by ballot 56 votes and by machine 138 votes, or a total of 194 votes, at said precinct 36 at said election; that the contestee, McAuley, received by ballot 93 votes at said precinct 36 at said election and that by reason of the irregularity and breaking of the machine as herein found it is impossible to tell the exact number of votes received by the contestee, McAuley, at said precinct number 36 at said election, but that the greatest number of votes the said contestee could have received by machine at said election in said precinct was 182 votes. The court therefore finds that in said precinct 36 the contestor received 194 votes; that the contestee received 93 ballot votes and an unascertained number not exceeding 182 votes by machine, and that the total vote received by the contestee at said precinct 36 at said election for the office of sheriff is not known by the evidence, and that neither contestor nor contestee have any evidence or means of obtaining the evidence necessary

to establish the exact number of votes received by the contestee at said precinct.

In finding No. 56 the court found: That the contestor, Humphries, received a total of 8,490 votes; that the contestee, McAuley, received 8,328 votes exclusive of whatever number of votes he, the said McAuley received by machine vote in the 36th precinct. That the said McAuley received a number of votes by machine at said precinct and that the number of votes so received is not shown by the evidence.

In finding No. 57 the court found: That it is not shown by the evidence that the contestor received a greater number of votes than the contestee, and it is not shown by the evidence that the contestee did not receive a number of votes equal to or greater than the number received by the contestor.

The question now presented is: Is the conclusion of law made by the lower court correct?

It is the law that the burden is upon the contestor to prove that he received more legal votes than the contestee before he would be entitled to the office in question. In the case of Lugar v. Burns (1926), 197 Ind. 646, 150 N. E. 774, 151 N. E. 689, which was an election contest, the court said: "The contestor had the burden of proof in this action, and he cannot recover except he has affirmatively established the fact that he received more legal votes than the contestee; not merely that he received as many, the certificate of election being sufficient to support the contestee's right to the office until overcome by evidence that the contestor received more votes than he did."

The burden being upon the contestor to establish his right and title to the office, he cannot succeed in this action if he has failed in this respect.

It is found in finding No. 49: That there were 182 persons who voted on the machine in precinct number

36 whose votes were not tabulated or counted by reason of the defect in the machine. In finding number 46 the court found that the contestor received 8,490 votes and that the contestee received 8,328 exclusive of whatever number of votes he received on the machine.

In finding 49 the court found that the contestor, in precinct number 36, received 138 votes on the machine and the court further found that the dial or counting apparatus numbered 23 on said machine, which registered the vote for the contestee, became broken and did not register and tabulate the vote correctly for the contestee. If the 182 votes not registered or tabulated on the machine were cast for the contestee he would then have the majority of the votes cast for the office in question. The burden was upon the contestor to prove that he received a majority of all votes cast.

The case of *People* v. *Wintermute* (1909), 194 N. Y. 99, 86 N. E. 818, is very similar to the instant case. The voting machine in that case failed to register the votes the same as in this case. The contestor at the trial introduced 51 witnesses to prove that they had voted for him; the contestee objected to this evidence and the court held it was proper. The court said: "When the elector in the use of a voting machine complies with the prescribed regulations for its use so as to indicate his choice for any particular office, the vote, so far as he is concerned, is complete. The registry by the machine is simply a substitute for the canvass of written votes. That it failed to work properly can not destroy the effect of the act of the elector in the exercise of his constitutional right. . . . The right of the elector to vote is conferred by the Constitution, and whenever he exercises that right in conformity with the methods prescribed by law he is entitled to see that his vote is given full force and effect in the determination of what persons have been elected to office."

In the instant case the burden was upon the contestor to show by competent evidence the person or persons for whom the 182 voters cast their ballot in order to determine whether the contestor or contestee received the majority of all votes cast. It might be suggested, as in *People* v. *Wintermute, supra,* that this would be a great inconvenience and hardship upon the contestor. This perhaps is true, but as said in the case cited: "If a party has a legal title to an office, it surely can be no legal reason for denying him the opportunity to establish it that such process will require the examination of a large number of witnesses and consume much time in the proceeding. Rights of parties cannot be determined on such a basis."

A judgment upon the rights of the parties to an office cannot be rendered unless it is ascertained who is entitled to the office, and this can not be done without ascertaining which of the candidates actually received the highest number of votes. *State ex rel. Waymire* v. *State* (1885), 101 Ind. 36.

In the case of *Reynolds* v. *The State* (1888), 61 Ind. 392, the court said: "The will of the people in the selection of a public official is not to be frustrated, and the right or title of any one to a public office to which he has been duly and legally elected is not to be defeated, by the loss or destruction of any or all of the papers or ballots pertaining to such election. If, in this case, the evidence on the trial had shown the total loss or destruction of all the papers pertaining to, and of all the ballots at, the October election, 1876, in Clinton township, in that event, we think, that the appellant might have shown by the oral testimony of each of the qualified voters of said township who voted at said election, for whom he voted for the office of sheriff of Boone county, as secondary evidence of the matter in issue."

So in the instant case, the contestor having the bur-

den of proof, it was his duty to establish by legal evidence that he received the highest number of votes cast for sheriff, and until he established by evidence for whom the 182 voters cast their ballots he failed to prove that he received the highest number of votes cast for the office of sheriff of Delaware county.

We find that the special finding of facts are supported by the evidence and the proper conclusions of law are stated upon the findings.

Judgment affirmed.