MARTIN *v.* YOUNGBLOOD

[No. 26,608. Filed April 29, 1937.]

648

*Sanford K. Trippet, James F. Ensle, W. D. Hardy,* and *Thomas F. O'Mara,* for appellant.

*Henning & Youngblood, Roscoe Kiper, Ora A. Davis,* and *Fred C. Gause,* for appellee.

PER CURIAM—This was an action by the appellant against appellee, to contest the election of Judge of the Second Judicial Circuit of the State of Indiana held on November 6, 1934, and demanding a recount as provided by Ch. 242, Acts 1933 (§7428 Baldwin's 1934). Appellant and appellee were the only candidates for the office.

The first question to determine is raised by appellee. He contends that Ch. 242, Acts 1933, p. 1098, gives the right of contest to district, county, township, and municipal offices, but does not apply to a circuit office, and hence the court has no jurisdiction to determine the questions here presented. This question was presented by a motion to dismiss in the recent case of *Conley* v. *Hile* (1935), 207 Ind. 488, 193 N. E. 95. We quote the following from that opinion (p. 493) :

"Appellant moved to dismiss the action on the ground that a judge of a superior court is not a county, township, or municipal officer, and that, therefore, the circuit court had no jurisdiction to try the case. The statute concerning elections, §7597 et seq., Burns 1926, provides in §7612 (§29-2201 et seq., Burns 1933, §7413, Baldwin's 1934) :
'. . . all contests for district and circuit offices, not otherwise provided in this act, shall be tried in the county giving the largest vote for such office at such election : . . . .'
There is a prior provision for contesting the seat of the person elected to the house of representatives, but there is no other provision concerning judges or prosecuting attorneys, and the section must be deemed to apply to a contest of the office of judge of the circuit or superior courts and of prosecuting attorneys. While the question was not raised, this court recognized such to be the rule in the case of *William* v. *Bell* (1915), 184 Ind. 156, 110 N. E. 753."

This same provision in substantially the same language is found in §3 of Chapter 242, Acts 1933, p. 1099 (§7430 Baldwin's 1934). Upon the authority of the above case we conclude that the trial court did have jurisdiction to hear and determine the case.

Appellant's first ground of contest was based upon the first cause of contest mentioned in the statute, being §2, Ch. 242, Acts 1933, p. 1098. This section provides that:

"Any election, the contest of which is provided for in this act, may be contested for any of the following causes:

First. For irregularity or malconduct of any member or officer of any precinct election board or the proper board of judges or canvassers."

Appellants first paragraph of contest alleged the following:

"That this contestor now desires to and does contest said election of said contestee, Union W. Youngblood, to said office of Judge of the Second Judicial Circuit, in the State of Indiana, on the following grounds and for the following reasons, each separately and severally stated:

1. For irregularity and malconduct of the members and officials of the precinct election boards, boards of judges and canvassers in the following precincts in Warrick County, State of Indiana, to-wit: . . . ." (here follows a list of precincts in Warrick County, followed by an allegation that the above are all the precincts in Warrick County, and also stating that in certain named precincts paper ballots only were used and in others voting machines only were used.)

The petition then proceeded with the following allegations.

"That said irregularity and malconduct was in these things, to-wit: that in said precincts they denied to duly qualified voters the right and privilege of voting at said election and that said voters would have cast a ballot for this contestor if permitted to vote in said election, this contestor is informed and believes, and that a sufficient number of said duly qualified voters would have cast a vote for this contestor in said election to have elected him Judge of the Second Judicial Circuit, in the State of Indiana, if they had been permitted to vote in said election and had not been denied their right and privilege of casting a ballot for this contestor in said election."

To this first ground of contest appellee filed a motion to make more specific, to the effect,

"That the contestor be required to state in
said ground of contest in said petition precisely
and definitely what the Election Boards and
members thereof in each of the precincts therein
set forth did or said that denied to any duly quali-
fied voter the right and privilege of voting at said
election mentioned in said petition."

This motion was sustained by the court and is one of
the assigned errors on this appeal.

The statute provides as the first ground for contest,
irregularity and malconduct of any member or officer
of any precinct election board. This was made the first
ground of contest of appellee. He specifies the partic-
ular irregularity and malconduct of the election officers
upon which he relies, by alleging that they denied duly
qualified voters the privilege and right to vote at said
election. This was the statement of the issuable fact.
Had appellant complied with the court's order to state,
precisely what the officers or members of the election
board said or did in each instance, that denied such
voters their right to vote, he would have pleaded the
evidence to support the allegation contained in the peti-
tion. Suppose appellant had alleged in his first speci-
fication for a contest, that in certain named precincts,
certain named election officials drew a loaded revolver
on certain named qualified legal voters when they pre-
sented themselves at the polls for the purpose of cast-
ing their ballot, and said to such voter, that he would
shoot him or do violence to him if he attempted to vote.
Under such circumstances a motion to strike out such
allegations would have been proper as being allegations
of evidentiary facts, and not the allegations of issu-
able facts. Such facts would be very proper to introduce
at the trial. How could appellant prove his allegation
that qualified legal voters were denied their right to vote,
unless he placed witnesses on the stand and had them
relate the specific things done or what the election of-

ficers said to them at the time. In other words, had appellant alleged in his petition the things required by appellee's motion, he would have pleaded the very facts that would have ultimately appeared in evidence.

It has been repeatedly held that such is not necessary. In *Petree* v. *Fielder* (1891), 3 Ind. App. 127, 29 N. E. 271, it was held that evidentiary matter in a pleading is mere surplusage. In *Indiana Natural Gas & Oil Co.* v. *Wilhelm* (1909), 44 Ind. App. 100, 86 N. E. 86, it was said that only the ultimate facts to be proved need be alleged in a complaint. Issuable facts and not the evidence should be pleaded. *Singer Sewing Machine Co.* v. *Phipps* (1911), 49 Ind. App. 116, 94 N. E. 793. So as a matter of pleading the trial court was clearly in error. But granting the trial court was in error in requiring appellant to make said first paragraph of his petition more specific, and in striking out said first paragraph upon refusal by appellant to comply with said order, was appellant harmed thereby? Had appellee raised no question as to the sufficiency of the pleading, and had appellant introduced evidence upon that issue, and suppose appellant had shown the allegations to be true, could the court in an election contest case count votes in favor of either party that were never cast? Certainly not. In a contest election case the ballots actually cast determines the result of an election, and not the ballots that were never cast, or ballots that might have been voted but were not, even though the malconduct of some or all of the members of the election board was responsible for the failure of such qualified voters not voting. Consequently, appellant was not harmed by the action of the court in striking said first specification from the record, inasmuch as it stated no valid ground for contest.

Appellant contends that the court erred in refusing to allow him to file his amended petition of contest

herein. The objection made by appellee to the filing of said amended petition was, that the first, third, and fourth ground of contest set out in the amended petition was identical with the first, third, and fourth specifications set out in the original petition, but the second ground alleged in the amended petition was not an amended second specification but stated a new ground of contest not alleged in the original petition, and inasmuch as it was not tendered within the time allowed by the statute for filing a petition for contest it was properly rejected by the court. It seems to be settled in this state that new grounds of contest cannot be introduced by way of amendments to the original petition after the expiration of the time fixed by statute for the filing of contest proceedings. *Humphries* v. *McAuley* (1933), 205 Ind. 469, 187 N. E. 262, and cases there cited.

Appellant contends that his tendered amended second paragraph was not a new ground of contest but was an amendment to the original second paragraph of petition. In the second paragraph of the original petition appellant alleged:

"2. On account of illegal votes, in this, to-wit: that said precinct election boards, boards of judges and canvassers, counted for said contestee votes not cast for him and mutilated and marked ballots in the following precincts in Warrick County, Indiana, to-wit: . . . ."

In his amended second paragraph of petition he alleged:

"2. On account of illegal votes, in this, to-wit: that, in each of the said several precincts, hereinafter set forth, voters not legally qualified to vote therein were by said precinct election board permitted to vote therein, and such disqualified voters did vote therein and did vote for the contestee herein, which said votes were illegal and were subsequently by said election boards and by the

boards of judges and canvassers counted for the contestee herein."

Appellant frankly states that the purpose of filing his amended petition was for the purpose of making competent evidence to the effect that illegal votes were cast for and counted for contestee at said election. It is observed that in contestor's fourth specification is the following allegation:

"That said irregularity and malconduct was in these things to-wit: that in some of said precincts this Contestor is informed and believes that legal votes cast for the Contestor therein for office were not counted for him, *and illegal votes cast therein for said Contestee of said office were counted for said Contestee;*" (Our italics).

The fourth specification which contained the above allegation was broad enough to permit appellant to introduce evidence on the question of illegal votes, for the above allegation directly and clearly charges that illegal votes were counted for contestee, and such votes could not be counted if they had not been cast by persons who were not legally qualified to vote. So we conclude that because appellant's fourth specification was sufficiently broad to make competent evidence that persons who were not legal voters of Warrick County to vote at said election and that such voters cast their ballot for contestee, and were counted for contestee, appellant's rights were in no way affected by not being permitted to file his amended petition. In the absence of a record showing affirmatively that such evidence was offered and rejected, we must assume that appellant was permitted to introduce such evidence if offered or that no such evidence was offered. Every presumption is in favor of the validity of the proceeding in the trial court unless it is made to appear affirmatively that such is not true. *Myers* v. *Murphy et al.* (1878), 60 Ind.

282; *Ferguson* v. *Hull* (1894), 136 Ind. 339, 36 N. E. 254.

Appellant in his argument says that appellee under his second paragraph of answer, wherein he alleged that illegal votes were cast for and counted for appellant, he (appellee) was permitted to and did introduce evidence to prove that certain persons voted at said election who did not, at the time possess the requisite qualifications of a legal voter, and were illegal voters, and that said illegal voters did vote for and did cast their ballot for the contestor, and were counted for the contestor and that he (appellant) was not permitted on rebuttal to show that certain persons who did not possess the legal qualifications of a legal voter, voted at said election and that such voters did vote and did cast their ballots for the contestee and were so counted for said contestee. This is only an assertion on the part of appellant. The evidence is not in the record, and we are not in a position to say that such evidence was in fact offered and rejected. If appellant desired to present such a question to this court on this appeal, he should have prepared his record in such a manner that it would have appeared affirmatively that such were the facts.

Appellant filed a reply to appellee's second paragraph of answer, wherein he alleged that illegal votes were cast for the contestee and were wrongfully counted for the contestee. After appellee had rested his case, appellant's said second paragraph of reply was stricken out on motion of appellee. This is assigned as error. As stated above appellant by his fourth ground of contest charged that illegal votes were cast and counted for the contestee, and under this charge he could have introduced whatever evidence he might have had upon that subject, and upon the record as it is presented to us we must assume he availed him-

self of that opportunity. No showing is made that such evidence was not offered or if offered was rejected by the court. If such evidence was offered and received, no harm was inflicted on appellant by striking out his second paragraph of reply. It may also be observed that appellee by his second paragraph of answer raises again the question of disqualified voters participating in the election. Section 7, Ch. 242, Acts 1933, in part provides that:

> "The court shall determine the issues raised by such petition and answer thereto, and shall declare as elected or nominated, as the case may be, that qualified candidate who received the highest number of legal votes, and render judgment accordingly, . . . ."

Section 4 of said act provides that:

> "Under an answer of general denial the contestee may present any defense or answer he may have to the allegations or such petition, or he may file special answer thereto or both."

It is apparent that the legislature, in contest proceeding, did not intend the observance of strict technical rules of pleading, but rather contemplated liberal rules of pleading so that the end sought to be accomplished, viz, to determine, upon the merits of the case, who of the qualified candidates in fact received the highest number of legal votes. So, if the contestee might introduce all defenses under a general denial to a petition for contest, it would be reasonable and consistent to say, that under the same provision of the statute, the contestor would be permitted to introduce rebuttal evidence to an affirmative answer or what might be called a counter petition, filed by contestee. In the instant case appellee filed his second paragraph of answer in which he charged in substance that certain persons who were not legal qualified voters did vote in said election and that said illegal votes were voted for, and

were wrongfully counted for contestor. Contestor might take the position in the first instance that, all who voted at said election were legally qualified voters and that their votes should be counted regardless for whom the vote was cast, but the contestee might contend, under what might be called a counter petition, that a certain group of voters were not legally qualified voters of the county. Certainly it could not be said that because the contestor contended in the first place that they were legal voters, and in the event the court held otherwise, that the contestee would be permitted to introduce evidence as to those who voted for the contestor, and have the court strike out such ballots and not permit the contestor to show that some of the same class voted for the contestee. Such procedure would not be in harmony with our general conception that trial courts are courts of justice, and was engaged in an honest effort to do the very thing contemplated by the statute providing for the contest of elections. In all contest cases which we have read for a mistake in counting or on account of mutilated ballot, all ballots are in issue, and a mistake is corrected regardless of whether it is in favor of the contestor or the contestee without special answers. The same is true with mutilated ballots. We think the same rule must apply when the question of illegal votes is raised, whether raised by the contestor in his petition or raised by the contestee by a counter petition. The evidence, as stated before, is not brought into the record, and no attempt was made to bring the evidence before this court. It must be presumed that such evidence, if offered by the contestor, either in chief or on rebuttal was admitted by the court, and if admitted, appellant has no ground of complaint. If it was offered and rejected by the court, the appellant had his remedy by saving his exception and presenting the question to this court on appeal.

This he did not do. He must be deemed to have waived any such error if any was committed.

This court might infer from the briefs filed by both appellant and appellee that the trial court did not conduct the trial in accordance with the law as interperted in this opinion, but such inferences furnish no basis for reversal of cases. We pass upon questions that are presented by the record. As the record in this case comes to us no reversible error is shown.

Judgment affirmed.