C. CALLAHAN COMPANY *v.* LAFAYETTE CONSUMERS COMPANY.

[No. 15,149.  Filed.July 1, 1936.]

320

*Randolph & Randolph,* for appellant.

*Stuart, Stuart & Devol* and *Cable G. Ball,* for appellee.

WOOD, P. J.—Appellee, as lessee, brought suit against the appellant for possession of certain real estate in the city of Lafayette, and for damages for the alleged wrongful and forcible eviction of appellee therefrom, and the wrongful and forcible detention of the possession thereof by appellant. From a judgment in favor of appellee, this appeal is prosecuted.

The issues consisted of what the parties have designated as an amended and supplemental complaint in three paragraphs, the first was in the usual form for possession of real estate and for damages for the unlawful and forcible entry therein and detention thereof; the second and third paragraphs were quite similar in their allegations, each setting out in detail, the various transactions through which the appellee traced the source of its alleged interest in and right to possession of said real estate. The appellant filed an answer in general denial to each paragraph of this complaint. It also filed a separate verified second paragraph of answer to the second and third paragraphs of complaint in which it denied the execution of certain written documents set out as exhibits to each of said paragraphs of complaint on which the appellee based his alleged interest in and right to possession of said real estate. It also filed a separate third paragraph of answer to the second and third paragraphs of complaint in which it alleged that it was the purchaser for value in good faith and without notice or knowledge of any claim, right or interest of appellee in and to said real estate. Appellant

also filed a counterclaim against appellee in which it alleged that it was the owner in fee simple of the real estate in question, and sought to have its title quieted therein as against the appellee. Appellee filed a separate paragraph of reply in general denial to appellant's third paragraph of answer to appellee's second and third paragraphs of complaint, and a reply in general denial to appellant's counterclaim.

On these issues the cause was tried to the court without the intervention of a jury. The court made a general finding for the appellee, and rendered judgment ·in its favor. The appellant filed a motion for a new trial within the statutory period of time, which motion was overruled. The only error properly assigned requiring our consideration, is the overruling of the motion for a new trial, in which appellant alleged sixty-six separate causes therefor, which will be disposed of in the order in which they are presented and discussed in that portion of appellant's brief devoted to "Propositions, Points and Authorities."

It is appellant's first contention that the decision of the court is not sustained by sufficient evidence and is contrary to law. Under this contention appellant asserts that it was a bona fide purchaser for value of the fee simple title to the real estate by a warranty deed from the holder of the record title without notice of appellee's alleged interest therein; that the appellee claimed to be an assignee of a lease-hold interest in said real estate through unrecorded instruments; that the appellee assumed many conflicting positions after appellant acquired the fee simple title to the real estate in May, 1925, and that appellee failed to prove that the assignment of the lease under which it claimed its right of possession to the real estate had ever been properly executed.

While there are many questions presented by the

record for our consideration, the ultimate determination of the rights of the parties to this controversy is dependent upon the answer to be made to the query, whether or not under the facts and the law applicable thereto, the trial court was warranted in finding and adjudging that the appellant had actual knowledge of appellee's alleged interest in and right to possession of the real estate, as well as whether it had constructive notice thereof, sufficient to put it on inquiry previous to the purchase and payment of the consideration for the real estate in May, 1925.

The evidence is voluminous and covers a broad field of inquiry; to attempt a complete summary thereof would unduly prolong this opinion and serve no good purpose. An examination of the record discloses that some of the facts are not controverted. We set them out as briefly as their substance will permit.

In May, 1906, one William A. Wildhack became the owner, subject to certain existing leases, of the real estate concerning which this litigation is being waged. September 6, 1906, Wildhack as lessor entered into a written contract with Born and Company, a Lafayette corporation, as lessee, under the terms of which the lessor leased the real estate to the lessee for a period of twenty-five years from that date, or to September 6, 1931. The conditions contained therein necessary to be considered here were: that the lessee should pay to the lessor as rent for the use of said real estate the sum of $60 per annum, payable in advance on the 6th day of September of each year during the term of the lease, also all taxes, assessments, license fees or other charges made against said premises or any improvements placed thereon, including any special assessments for paving or sewage, levied and payable during the term of the lease. The lessee was also required within one year from the date of the lease to erect substantial buildings and

other improvements on the leased premises to cost not less than $15,000 to be built and maintained subject to the satisfaction of the lessor. The lease was not to be assigned, nor said premises or any part thereof subleased or occupied by any party other than the lessee without the written consent of the lessor or his assignees. It was expressly stated and understood that the lessee was fully informed that the Lake Erie and Western Railroad Company had an interest in the leased premises held by Wildhack in trust for the railroad company and that the lease should be binding against the lessee in favor of the railroad company to the same extent as though it had been a party to the execution of the same, and that said lease should be binding against the railroad company in favor of the lessee in the same manner as if it had been a party thereto. Upon the failure of the lessee to perform the conditions of the lease it could be terminated by the lessor, in which event all permanent improvements placed upon the premises should become the property of the lessor, and likewise at the termination of the lease by expiration of time said improvements were to become the property of the lessor. The lessee had the right to extend the lease for an additional period of twenty-five years from the date of its expiration, if the election was made in writing and served on the lessor not less than thirty days prior to the date of expiration. The lease was binding upon the successors or assigns of the original parties thereto. It was acknowledged by the respective parties and properly recorded October 12, 1906.

September 6, 1906, the Lake Erie and Western Railroad Company, as the first party, and Born and Company as the second party, entered into a written contract for the erection, maintenance and use of a side track and trestle upon the premises leased by Born and Company from Wildhack, this contract to continue during

the same period of time as the lease from Wildhack to Born and Company. It was made with the approval and affirmance of Wildhack. The execution of this contract was acknowledged by Born and Company. It was not acknowledged by the railroad company. It was recorded October 6, 1906. This document was identified as plaintiff's (appellee's) exhibit "B" at the trial of this cause and was admitted in evidence over the objection of appellant.

January 28, 1920, Luke H. Balfe, William R. Coffroth, and Frank Dienhart as first parties, Edward Born and Isaac Born as second parties, and Samuel T. Murdock as third party, entered into a written contract, under the terms of which the first parties agreed to have certain physical properties of the Lafayette Artificial Ice Company, and the second parties agreed to have certain physical properties of Born and Company, and the lease from Wildhack to Born and Company, excepting certain elevator properties with right of ingress and egress thereto, retained by Born and Company, transferred to the third party who, in consideration thereof, agreed to have a corporation organized for the purpose of operating an ice and coal business in the city of Lafayette, forty-five per cent of the stock of the new company to be issued to each of the first and second parties, and ten per cent to the third party. The execution of this contract was not acknowledged, and it was not placed on record. Samuel T. Murdock died intestate March 21, 1921, and this document was found after his death among some of his papers and personal effects in the Merchants National Bank in Indianapolis. This document was identified as plaintiff's (appellee's) exhibit "O" at the trial of this cause and was admitted in evidence over the objection of appellant.

April 1, 1920, Born and Company, by Edward Born as President, for the expressed consideration of one

dollar, executed a written assignment of all right, title, and interest in the lease entered into by it with Wildhack and the Lake Erie and Western Railroad Company on September 6, 1906, to Samuel T. Murdock, his heirs and assigns. The document was subscribed and sworn to before a notary public. It was not placed on record. It was likewise found in the Merchants National Bank of Indianapolis, among some of the private papers and effects of Samuel T. Murdock after his death. This document was identified as plaintiff's (appellee's) exhibit "D" at the trial of this cause and was admitted in evidence over the objection of the appellant.

April 1, 1920, Born and Company signed a written document which recited that it had sold to Lafayette Consumers Company all its physical properties, a part of which sale was a transfer to Samuel T. Murdock or Lafayette Consumers Company of all its physical properties except elevator properties to be free from claims and liens, and that said Born and Company, Edward Born, and Isaac Born bound themselves to save said Murdock and Lafayette Consumers Company harmless against any loss which might be sustained because of any claims or liens against Born and Company. The execution of this document was not acknowledged, and it was not placed on record. It was likewise found in the Merchants National Bank of Indianapolis among some of the private papers and effects of Samuel T. Murdock after his death. This document was identified as plaintiff's (appellee's) exhibit "C" at the trial of this cause, and was admitted in evidence over the objection of appellant.

May 2, 1921, appellee and Born and Company entered into a written agreement as first and second parties respectively, in which it was recited that in consideration of services performed by the second party for the first party at its request and in payment for same, and

further, in perfecting the agreement between Samuel T. Murdock, trustee, in behalf of the first party in the properties operated at Lafayette, Indiana, at the date of the contract by Lafayette Consumers Company, said company assigned free and uninterrupted occupancy and use of the office building, scales, and other appliances located upon the land described as under the Wildhack lease, subject to certain conditions therein set out, not involved here, to Born and Company. The execution of this document was not acknowledged, nor was it placed on record. March 4, 1922, Born and Company by a written assignment on the back thereof, transferred its right under this contract to H. G. Lutz and J. C. F. Redinbo. The execution of this document was not acknowledged, nor was it placed on record. These two documents were identified as plaintiff's (appellee's) exhibits "E" and "F" respectively, and were admitted in evidence over the objection of appellant.

March 22, 1922, Born and Company made a written assignment of the lease between said company and Wildhack to H. G. Lutz and J. C. F. Redinbo, as trustees for a proposed corporation "subject to the rights of the Lafayette Consumers Company." The execution of this document was acknowledged, and it was placed on record March 23, 1922. A cross reference to this assignment appeared upon the page of the record in which the original lease between Wildhack and Born and Company was recorded.

November 8, 1922, Lutz and Redinbo, as trustees, made a written assignment of the Wildhack lease to the Lafayette Cooperative Elevator Company, "subject to the rights of the Lafayette Consumers Company, a corporation of Indiana." The execution of this document was acknowledged and placed on record December 5, 1922. A cross reference to this assignment appeared upon the page of the record in which the original lease

between Wildhack and Born and Company was recorded.

A copy of the assignment of the lease from Born and Company to Lutz and Redinbo appeared in full in an abstract of title to the property furnished to appellant previous to the date upon which it made the purchase, and they had knowledge of the contents of said assignment at that time.

February 13, 1925, Born and Company for an expressed consideration executed a written assignment of all its interest in the Wildhack lease to Wildhack, and on March 27, 1925, Wildhack executed a written assignment of all his interest in said lease to appellant. The execution of both of these assignments was acknowledged, and they were both placed on record.

March 13, 1925, Wildhack and his wife signed and acknowledged the execution of a warranty deed to appellant conveying the property in question to it as grantee. This deed was placed on record.

Previous to the purchase of said real estate by appellant, the officers, directors, and stockholders of appellee took such preliminary steps as were provided by statute at that time for the purpose of dissolving and liquidating appellee corporation, but this proceeding was never fully completed.

It was stipulated that the taxes on the personal property, real estate, and equipment for the year 1921 were paid by the Lafayette Consumers Company, and that the taxes for the years 1922, 1923, 1924, 1925, 1926, and 1927 were paid by the Lafayette Ice and Coal Company.

While it is conflicting, there is competent evidence in the record from which the trial court could find that, after its organization, the appellee received the purported assignment of the lease from Born and Company, and in 1920 went into possession of the premises under said assignment, and continuously retained its interest

in and right to possession thereof from that date until it was evicted by appellant in May, 1927; that during the year 1922, a corporation known as the Lafayette Ice and Coal Company was organized, and that the stock of the Lafayette Consumers Company was sold to the Lafayette Ice and Coal Company, and that said last named company was in possession of said premises as a licensee of said Lafayette Consumers Company, and continuously occupied the premises, conducting an ice and coal business therein until the occasion of said eviction; that either the appellee or the Lafayette Ice and Coal Company paid the rent for said premises up to and including September 6, 1926, when said last named company issued and delivered a check for the rent to the Lake Erie and Western Railroad Company; that in August, 1925, William A. Hanger, President of the Lafayette Ice and Coal Company, made a tender of $60 in gold coin to appellant in payment of rent as required in the lease between Wildhack and Born and Company, which tender was refused; that the ice plant located on the premises was in operating condition and was operated by the Lafayette Ice and Coal Company during the year 1926; that the premises in question were only about two blocks from appellant's place of business; that appellant knew of the purchase of the premises from Born and Company by appellee in 1920; that the sign of the Lafayette Ice and Coal Company was painted on the building on the premises at the time appellant made its purchase; that the first installment of taxes assessed in 1928, payable in 1929, on said premises was paid by the Lafayette Ice and Coal Company; that in the payment of said taxes there was no distinction made between the taxes on the real estate and improvements; that neither the appellee nor the Lafayette Ice and Coal Company paid the taxes assessed against the real estate and improvements in the year 1928, payable in the fall

of 1929; that an officer of the Lafayette Ice and Coal Company made inquiry concerning the payment of said taxes before the last day for their payment and was informed that they had been paid by other parties; that the same facts existed as to the taxes assessed in 1929, payable in 1930, assessed in 1930, payable in 1931, and assessed in 1931, and payable in 1932; that previous to purchasing said real estate appellant made inquiry from officers of the Lafayette Ice and Coal Company concerning any interest or claim which it or any other parties had in and to said premises, and was informed of the claim and interest which the appellee had in and to the same.

Where the evidence is conflicting, the facts found by the trial court will not be disturbed on appeal if there is any competent evidence to sustain such finding. *Humphries* v. *McAuley* (1933), 205 Ind. 469, 187 N. E. 262; *Brown* v. *Brown* (1933), 205 Ind. 664, 187 N. E. 836. In the recent case of *Lincoln, etc., Co.* v. *Jensen* (1934), 99 Ind. App. 397, 189 N. E. 169 (transfer to Supreme Court denied November 20, 1934), this court in summarizing the rules which control in determining the sufficiency of evidence to sustain a finding or decision, said (p. 402) : "Evidence is not to be considered in fragmentary parts, but all facts and circumstances proven are to be considered together. The probative force of all the proved facts when so considered is determinative of the result which should be reached by the court or jury trying the cause.

"It is not required that facts be proved by direct and positive evidence. The court or jury trying the cause may draw any reasonable inference, and if a fact may reasonably be inferred from the facts and circumstances which the evidence tends to establish, it is sufficient on appeal." This court will not weigh conflicting evidence in suits to

quiet title. *Adams* v. *Betz* (1906), 167 Ind. 161, 78 N. E. 649.

The general rule seems to be that where the purchaser of lands rests his claim upon the fact that he is a bona fide purchaser in good faith, he is required in his pleading setting up said defense to deny that he had any notice of secret existing liens, equities, or rights in the property to which he claims title at the time of the payment of the purchase price or consideration therefor. It is also the rule, supported by authorities, that the burden is cast upon the party who relies upon unregistered documents to sustain his rights in real estate, as against one who claims to be a purchaser thereof for a valuable consideration without notice, to allege and prove that such purchaser had notice of such unrecorded document at the time of the purchase. Payment of a valuable consideration by such purchaser raises a presumption of good faith. *Citizens State Bank* v. *Julian et al.* (1900), 153 Ind. 655, 55 N. E. 1007.

As applied to controversies of the class to which the instant case belongs, the court recognizes two kinds of notice, namely, actual and constructive notice in determining whether the purchaser of an interest in real estate is or is not a bona fide purchaser thereof. Notice has been held by some courts to be actual when it has been directly and personally given to the person to be notified. However, it is stated to be the general rule that actual notice embraces all degrees and grades of evidence from the most directive and positive proof to the slightest circumstances from which a court or jury would be justified in inferring notice. It is a mere question of fact and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion. Constructive notice is a legal inference from established facts and like other legal conclusions does not admit of dispute. *Mishawaka, etc., Co.* v. *Neu*

(1936), 209 Ind. 433, 196 N. E. 85; 20 R. C. L., sec. 2, p. 340. Thus, deeds, mortgages, and leases of real estate for a period of more than three years, when properly acknowledged and placed on record as required by sec. 56-119, Burns' 1933 (§14671, Baldwin's 1934), are constructive notice of their existence, and charge a subsequent grantee with notice of all that is shown by the record, including recitals in the instrument so recorded. *Rosser* v. *Bingham* (1861), 17 Ind. 542; *Ogleby* v. *Todd* (1906), 166 Ind. 250, 76 N. E. 238; *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 96 N. E. 196.

In *Smith* v. *Schweigerer* (1891), 129 Ind. 363, 365, 28 N. E. 696, our Supreme Court said: "The appellee was first in point of time, and his possession was indicated by acts assertive of ownership, so that the appellant was put upon inquiry. As he had notice of facts making it incumbent upon him to make due inquiry, he is bound by all the knowledge which a reasonable inquiry would have imparted. *Harper* v. *Ely*, 56 Ill. 179; *Kuhns* v. *Gates*, 92 Ind. 66. But in this instance there was not merely notice of facts putting the party upon inquiry, but there was also notice that the person in possession was there as owner. It is impossible, therefore, to regard the appellant as a *bona fide* purchaser. One who purchases with full knowledge of prior equitable or legal rights is not a purchaser in good faith. Notice before payment of the purchase-money prevents the acquisition of the character of a *bona fide* purchaser. *Anderson* v. *Hubble*, 93 Ind. 570." See also *Hawes* v. *Chaille* (1891), 129 Ind. 435, 28 N. E. 848.

Where a prospective purchaser of real estate is informed by a tenant in possession of the lessor's claim or interest in the premises, he is put upon inquiry and cannot thereafter become a bona fide purchaser. *Gallion* v. *McCaslin* (1820), 1 Blackf. 91. This court has held that a parol contract for the sale of real estate for a valu-

able consideration may be validated by possession given and taken under the contract, and that the principles of equity will not permit one who has thus rightfully gone into possession as a purchaser to be transformed into a trespasser and wrongdoer at the will of a vendor or his privy. Possession of such purchaser is sufficient notice of his rights. *Mowrey* v. *Davis* (1895), 12 Ind. App. 681, 40 N. E. 1108.

Open, visible, continuous, notorious, unequivocal, exclusive, and uninterrupted possession of land, a possession which would be naturally and generally known is notice to the prospective purchaser of the rights of one in possession, and that knowledge of possession on the part of the purchaser is not necessary, notice in such cases is a legal deduction from the fact of possession, and possession by an equitable claimant at the time of consummation of the sale is as effective to charge the purchaser with notice as the recording of an instrument prior to such purchase. *Mishawaka, etc., Co.* v. *Neu, supra; Johnston* v. *Glancy* (1835), 4 Blackf. 94; *Decker* v. *Mahoney* (1917), 64 Ind. App. 500, 116 N. E. 57; *DeHaeze* v. *Joyce* (1930), 92 Ind. App. 48, 174 N. E. 238; 27 R. C. L., sec. 475, p. 710.

In the case of *Wilson* v. *Kruse* (1915), 270 Ill. 298, 110 N. E. 359, the Supreme Court of Illinois said (p. 302) : "It is well settled that actual possession of lands by a party under an unrecorded deed is constructive notice of the legal and equitable rights of the party in possession. Possession by a tenant is the same, in all respects, as possession by the party himself. (Citing authorities.)

"Contracts not under seal, and even contracts not in writing, affecting land, are recognized in equity if they have been so far performed that to permit the party to repudiate them would be a fraud." See also *Moore* v. *Machinery, etc., Co.* (1921), 297 Ill. 564, 131 N. E. 141; *Manley* v. *Tow* (1901), 110 Fed. 241; *Bastin* v. *Myers*

(1924), 82 Ind. App. 325, 144 N. E. 425 (transfer to Supreme Court denied December 19, 1924).

The appellant was bound to take notice of the recorded Wildhack lease, and the assignments thereof duly ■ entered of record. *American, etc., Co.* v. *Indiana, etc., Co.* (1906), 37 Ind. App. 439, 76 N. E. 1006.

It would not be practical, because of its nature and volume, to make a specific application of the above principles of law to each separate item of evidence. We ■ have made a careful examination of the evidence, and when considered in its entirety with the above rules of law as our controlling guide, we conclude that the evidence was sufficient to sustain the decision of the court, and that its decision was not contrary to law.

In appellant's answer of *non est factum* it denied the execution by Born and Company of the assignment dated April 1, 1920, of the original lease between Wild- ■■ hack and Born and Company to Samuel T. Murdock, which assignment was identified as plaintiff's (appellee's) exhibit "D"; also, the execution by Born and Company and the Lafayette Consumers Company of the reassignment dated May 2, 1921, of certain rights under the Wildhack lease to Born and Company, which reassignment was identified as plaintiff's (appellee's) exhibit "E." This answer had the effect of placing upon appellee the burden of making a prima facie case in favor of the execution of the assignments before they could be admitted and read in evidence and the burden rested upon the appellee throughout the trial to establish the execution of the assignments by a preponderance of the evidence. *Carver* v. *Carver* (1884), 97 Ind. 497; *Fudge* v. *Marquell* (1905), 164 Ind. 447, 72 N. E. 565, 73 N. E. 895; *Alexander* v. *Blackburne* (1912), 178 Ind. 66, 98 N. E. 111. When these assignments were offered in evidence, appellant objected thereto, contending that there was no showing that there was any authority vested

in the officers assuming to execute said instruments for the respective corporations by the stockholders or board of directors to execute them; that the instruments were not signed by the secretary of the respective corporations and did not bear the corporate seal. "When a contract is made in the name of a corporation by the president, in the usual course of business, which the directors have the power to authorize him to make, or to ratify after it is made, the presumption is that the contract is binding on the corporation until it is shown that the same was not authorized or ratified. *Patterson* v. *Robinson,* 116 N. Y. 193; *Eureka Iron and Steel Works* v. *Bresnahan,* 60 Mich. 332; 1 Morawetz Corp., section 538; 1 Beach Corp., section 203; 17 Am. and Eng. Encyc. of Law, p. 124.

"One dealing with the president of a corporation, in the usual course of business, and within the powers which the president has been accustomed to exercise without objection from the directors, has the right to assume that the president has been invested with those powers. 1 Morawetz Corp., section 538; 1 Beach Corp., section 203; *First Nat'l Bank* v. *Kimberlands,* 16 W. Va. 555; *Eureka Iron and Steel Works* v. *Bresnahan, supra." Nat'l State Bank, etc.,* v. *Vigo County Nat'l Bank* (1895), 141 Ind. 352, 355, 40 N. E. 799.

It will be presumed that the president of a corporation had power to execute the assignment of a lease in view of sec. 4932, Burns 1926, in force at the time the contracts in question were entered into. *Bickhart* v. *Henry* (1918), 67 Ind. App. 493, 116 N. E. 15 (transfer to Supreme Court denied April 25, 1918). Failure to affix the corporate seal to a deed of conveyance by the corporation is waived when the purchasers go into possession and enjoy the benefits of the purchase. 7 Fletcher Cyclopedia Corp., p. 94, sec. 3022. The evidence was undisputed that after the execution of both of these assignments of the lease, the corporations, parties thereto, went into possession of

the premises affected thereby, and received and accepted benefits under said assignments, thereby acknowledging the validity of their execution. The court was justified under all the circumstances in finding that these assignments were executed and binding upon the respective parties thereto.

Causes for a new trial numbers 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 30, 31, 32, 33, 34, 60, 61, 62, 63, 64, 65, and 66, which are discussed by appellant in its brief are predicated upon alleged errors of the court in admitting certain exhibits offered by the appellee in evidence over the objection of appellant. It is not necessary to extend this opinion for the purpose of discussion each of these specifications for a new trial separately. These exhibits consisted of assignments of the Wildhack lease which had not been acknowledged and placed on record, certificates of stock issued by the Lafayette Consumers Company, vouchers showing the payment of rent and taxes by appellee and the Lafayette Ice and Coal Company on the premises and improvements thereon, minutes of a stockholder's meeting of Born and Company, and a letter from the Cleveland, Cincinnati, Chicago and St. Louis Railroad Company to appellee.

The objection to the admission of these various exhibits in evidence was that the assignment of the lease had not been acknowledged and recorded; that all the exhibits were evidence of transactions between appellee and third parties pertaining to the occupancy and use of the premises, to which appellant was not a party and of which it had no notice, and that the genuineness and authority of some of the exhibits had not been established previous to offering them in evidence. There was evidence sufficient to sustain the trial court's finding that the appellee or its licensee was in possession of the premises at the time of purchase by appellant. Under such

circumstances it was not error for the court to admit the exhibits in evidence, even though the appellant had no knowledge of their existence, for the purpose of showing the extent of appellee's possession, and what is claimed by the same. *Pitcher* v. *Dove* (1885), 99 Ind. 175; *Adams* v. *Betz, supra; Blair* v. *Whittaker* (1903), 31 Ind. App. 664, 69 N. E. 182; *Bastin* v. *Myers, supra; DeHaeze* v. *Joyce, supra; Wilson* v. *Kruse, supra;* Gillett, Indirect and Collateral Evidence, sec. 74, p. 107.

Whether or not those exhibits were genuine, against which that objection was urged, was a question for the trial court to determine from all the facts and circumstances in evidence before it, and there being some evidence to sustain their genuineness, this court is not at liberty to disturb the determination of the trial court in that particular.

Causes for a new trial numbers 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 51, 56, 57, 58, and 59, discussed by appellant in its brief are predicated upon alleged errors of the court in the admission and exclusion of certain parol testimony over the objection of appellant and the refusal of the court to require witnesses to answer certain questions propounded to them on cross-examination by the appellant over the objection of appellee. We have examined these various items of testimony, and the ruling of the court in reference thereto and are of opinion that the court did not abuse its discretion nor did it commit reversible error in any of these rulings of which appellant complains.

In presenting and discussing the various causes for a new trial, as basis for a reversal of the judgment from which this appeal is taken, appellant has urged upon us for consideration some facts and circumstances disclosed by the evidence relating to transactions which were collateral to the crucial facts upon which the rights of the parties depend and which could not have exerted a con-

trolling influence upon the trial court, and for that reason we do not consider them in this opinion.

Finding no reversible error, the judgment is affirmed.