

FILED

Jul 22 2016, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Amy L. Cueller
Daniel Cueller
The Cueller Law Office
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

John M. Plummer, Jr.
Plummer Law Office
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Wilson and Hollie Wilson, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Charles M. Huff and Bonnie M. Huff, <br><br> *Appellees-Plaintiffs.* | July 22, 2016 <br><br> Court of Appeals Case No. 13A04-1512-PL-2119 <br><br> Appeal from the Crawford Circuit Court <br><br> The Honorable Elizabeth Swarens, Judge Pro Tempore <br><br> Trial Court Cause No. 13C01-1405-PL-8 |

**Najam, Judge.**

## Statement of the Case

[1]    Richard Wilson and Hollie Wilson (collectively "the Wilsons") appeal the trial court's judgment, following a bench trial, in favor of Charles M. Huff and Bonnie M. Huff (collectively "the Huffs") on both the Huffs' complaint and the Wilsons' counterclaim. They raise two issues on appeal, which we consolidate

and restate as one dispositive issue, namely, whether the trial court committed clear error in imputing knowledge of the Huffs' leasehold interest in the property to the Wilsons.

[2] We affirm.

## Facts and Procedural History

[3] On April 27, 2012, the Huffs entered into a "Property Contract" ("Contract") to "sell on contract" property located on Lot 650 in Wildridge RV Resort in Crawford County ("Property") to the Wilsons. Plaintiff's Ex. 1. Bonnie Huff drafted the Contract, and it stated in relevant part as follows:

> We C. M. Huff and Bonnie M. Huff do hereby sell on contract the following property[:]
>
> Lot 650 in Wildridge RV Resort, located in Crawford County, Indiana, a portion of the North half of the Northeast quarter of Section 5, Township 2 South, Range 2 West;
>
> to Holly J. Wilson and Richard L. Wilson.
>
> The selling price of said property is to be $28,500.00 with monthly payments of $237.50. The first monthly payment will be 4/24/2012, continuing for 119 payments. They are to take care of the Wildridge RV Resort yearly dues fee is [sic] to be paid in December for following Year. Insurance on said property, utilities (electric, etc.) and taxes are the responsibility of the buyer.
>
> If payment is more than 10 days late there is a $10.00 fee added each month until payments are caught up.

*Id.* The Contract was signed by the Huffs, as "Sellers" of the Property, and the Wilsons, as "Buyers." *Id.*

[4] On May 27, 2014, the Huffs filed their complaint seeking to cancel the Contract and evict the Wilsons from the Property due to the Wilsons' failure to make monthly payments as required under the Contract. The Huffs also sought compensatory damages and costs. After receiving notice of the lawsuit, Hollie Wilson did a title search on the Property for the first time and discovered that the Huffs did not own the Property. Rather, the Huffs had a July 2005 assignment of a ninety-nine year lease from Willard Skaggs and Wanda Skaggs (collectively "the Skaggs"), who had themselves leased the Property from The Nashville Co., Inc., which was the owner of the Property. On June 23, the Wilsons filed their answer and counter-claim alleging that the Huffs committed fraud by misrepresenting themselves as owners of the Property, and they sought compensatory damages, attorney fees, and costs.

[5] The trial court held a bench trial on August 18, 2015, and, in an order dated November 13, 2015, the trial court entered the following findings of fact, conclusions thereon, and judgment:

### FINDINGS OF FACT

1. Huffs are the owners of a certain 99 year lease along with improvements on the following described real estate in Crawford County, Indiana, to-wit:

*Lot 650 in Wildridge RV Resort, located in Crawford County, Indiana, a portion of the North half of the Northeast quarter of Section 5, Township 2 South, Range 2 West.*

2. The Huffs acquired their interest in the above-described property by Assignment of Lease dated July 2, 2005[,] from Willard Skaggs and Wanda Skaggs, recorded July 14, 2005[,] in Miscellaneous Record Book 35, at page 242[,] in the office of the Crawford County Recorder.

3. On April 27, 2012, Wilsons contracted with Huffs to purchase Huff's [sic] interest in said recreational lot along with the improvements thereon for $28,500.00, and agree[d] to pay $237.50 a month for 119 monthly payments to satisfy the purchase prices.

4. In addition to the purchase price, Wilsons agreed to pay the resort dues, insurance on said property, utilities, taxes[,] and late fees for payments that are more than 10 days overdue.

5. Wilsons did not have a title search done prior to executing the Contract.

6. Wilsons failed to make all of the Contract payments, and made no payments after January[] 2015.

7. Wilsons have failed to make the following monthly payments due under the Contract: September 2012; March 2014; April 2014; May 2014; February 2015; March 2015; April 2015; May 2015; June 2015; July 2015; August 2015. (Total 11 months x $237.50 = $2,612.50) (Does not include late fees unpaid.)

8. The Wilsons continued to occupy and maintain possession of said Lot 650 until on or about August 31, 2015.

9. The Wilsons were present on the premises for [sic] 4 different times in the year 2015.

10. The Lot 650 was first leased for 99 years in October[] 1985, leaving approximately 73 years on the lease at the time of the Huff/Wilson Contract.

11. Upon payment in full of the purchase price, the Huffs would have assigned their lease to the Wilsons.

12. A search of the records in the office of the Crawford County Recorder would have disclosed that the Huffs['] interest was a leasehold interest[.]

13. The Property Contract does not represent that Huffs own the fee simple title to the Lot 650, nor do they represent that they will convey same.

14. There was insufficient evidence to prove Huffs misrepresented their interest in Lot 650.

15. Wilsons knew, or should have known, that they were buying an assignment of Huffs['] leasehold interest as the lease transfer from Skaggs to Huff[s] was recorded in the Office of the Crawford County Recorder on July 14, 2005.

16. Upon the filing of their Counterclaim, Wilsons continued to occupy the premises and make some payments, which is inconsistent with their claim that they were defrauded.

17. Both parties asked for rescission of the contract in open court.

CONCLUSIONS OF LAW

1. The Wilson[s] breached the Property Contract with the Huffs by failing to pay the monthly contract payments of $237.50 for 11 months out of the time they possessed the premises (April[] 2012 to August[] 2015).

2. Because of [the Wilsons'] continued use and possession of the premises without complying with the terms of the Contract, the Huffs have been damaged in the amount of $2,612.50.

3. Because of the breach by Wilsons, the Property Contract should be canceled.

4. The Wilsons have failed to meet their burden of proof on their Counterclaim alleging misrepresentation.

5. The Huffs are entitled to possession of Lot 650.

JUDGMENT

The Court now considers, orders and adjudges as follows:

1. The Property Contract between the Huffs and the Wilsons is hereby canceled.

2. The Huffs shall have the exclusive possession of Lot 650 in Wildridge RV Resort.

3. The Huffs are awarded judgment against the Wilsons in the amount of $2,612.50 plus court costs.

4. Judgment is entered for Plaintiffs on Defendants' Counterclaim.

Appellant's App. at 5-7. This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[6] At the Wilsons' request, the trial court entered findings and conclusions pursuant to Indiana Trial Rule 52, and our standard of review in that situation is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted).

And, because the Wilsons did not prevail at trial on their counterclaim, they appeal from a negative judgment.

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee*, 629 N.E.2d at 1282.

*Smith v. Dermatology Associates of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

### *Constructive and Actual Notice of Leasehold*

The Wilsons do not challenge the trial court's findings and conclusions that they failed to make monthly payments as required under the Contract. Instead, they contend that they should not be held liable for the missed monthly payments and should be reimbursed for the monthly payments they made because the Huffs fraudulently claimed in the Contract to be selling the Property rather than selling a ninety-nine year lease of the Property. In making this argument, the Wilsons point to the plain language of the Contract which

purports to "sell on contract the following property" and makes no mention of a lease of the Property. Plaintiff's Ex. 1.

[9] However, the Wilsons are mistaken in their contention that only the language of the Contract is relevant to what real estate interest would be conveyed by the document. Rather, as the trial court correctly found, the "Wilsons knew, or should have known, that they were buying an assignment of [the] Huffs['] leasehold interest" in the Property because the lease transfer to the Huffs was duly recorded. Appellant's App. at 6.

[10] A lease for more than three years must be recorded in the recorder's office of the county where the land is situated. Ind. Code § 32-21-4-1(a) (2012). When such a lease is "properly acknowledged and placed on record" as required by statute, it is "constructive notice of [its] existence,"[1] and a subsequent grantee is charged with "notice of all that is shown by record, including recitals in instruments so recorded" *C. Callahan Co. v. Lafayette Consumers Co.*, 2 N.E.2d 994, 1000 (Ind. Ct. App. 1936); *see also Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005) (holding that a "purchaser of real estate is presumed to

---

[1] Current Indiana Code Section 32-21-4-1(c) also provides that leases of more than three years that are properly recorded provide "constructive notice of the contents of the instrument as of the date of filing." Prior to July 1, 2014, this subsection contained that same language but the subsection began with the statement, "[t]his subsection applies only to a mortgage . . . regardless of when a mortgage was recorded." I.C. 32-21-4-1 (2012). Regardless, long-standing case law clearly provides that a properly recorded lease of longer than three years provides constructive notice of its existence. *See, e.g.*, *C. Callahan Co. v. Lafayette Consumers Co.*, 2 N.E.2d 994, 1000 (Ind. Ct. App. 1936).

have examined the records" in the chain of title and "is charged with notice, actual or constructive," of all such properly recorded instruments).

[11] Moreover, actual notice may be inferred from the fact that a person who is charged with a duty of searching the records of a particular property had the means of knowledge that he did not use. *Keybank Nat. Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind. Ct. App. 1998).

> Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. [*Altman v. Circle City Glass Corp.*, 484 N.E.2d 1296, 1298 (Ind. Ct. App. 1985), *trans. denied*.] Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. *Id*. Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances. *Id*. at 1299.

*Id*.

[12] Here, the Huffs recorded their Assignment of Lease from the Skaggs on July 14, 2005, in the Crawford County Recorder's Office, thereby providing constructive notice of the leasehold to all future purchasers of the Property, including the Wilsons. *C. Callahan Co.*, 2 N.E.2d at 1000. And the evidence supports the trial court's finding that the Wilsons would have discovered that the Huffs held a leasehold interest in the property if the Wilsons had searched the records in the county recorder's office. From that fact, the trial court could have determined

that the Wilsons were charged with actual notice of the leasehold interest. *Keybank*, 699 N.E.2d at 327. The fact that the Wilsons did not conduct a title search before signing the Contract is of no moment. They are presumed as a matter of law to have actual or constructive notice of the duly recorded leasehold within the chain of title. *Nally*, 820 N.E.2d at 648. Because the Wilsons are charged with such notice, as a matter of law they could not have been misled by the language of the Contract stating that the Huffs were selling the Property to the Wilsons.

[13] The trial court did not err in imputing knowledge of the Huffs' leasehold interest in the Property to the Wilsons and holding that the Wilsons failed to prove their counterclaim alleging fraudulent misrepresentation. Thus, we affirm the trial court's judgment for the Huffs on their claim and the Wilsons' counterclaim.

[14] Affirmed.

Robb, J., and Crone, J., concur.