ATTORNEYS FOR APPELLANT

Mario Garcia
Terry Tolliver
Brattain Minnix Garcia
Indianapolis, Indiana



FILED

May 28 2020, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Universal Auto, LLC, d/b/a James Myers, | May 28, 2020 |
| *Appellant-Defendant/Counterclaimant,* | Court of Appeals Case No. 19A-PL-1225 |
| v. | Appeal from the Marion Superior Court |
| Cory Murray, | The Honorable David J. Dreyer, Judge |
| *Appellee-Plaintiff/Counterdefendant* | Trial Court Cause No. 49D10-1809-PL-36457 |

**Crone, Judge.**

## Case Summary

[1]     Cory Murray purchased a used vehicle "as is" from Universal Auto, LLC d/b/a James Myers (Universal).[1] He signed an installment contract and also

---

[1] Universal operates as an LLC, and Myers was improperly captioned as "d/b/a" below.

purchased a service agreement. He experienced mechanical problems shortly after his purchase and took his vehicle for service as instructed by Universal. Claiming that he had defaulted on the installment contract, Universal repossessed the vehicle before Murray's first payment was due. Murray filed a contract action for damages, and Universal counterclaimed for damages and attorney's fees. The trial court entered judgment in Murray's favor on both his contract claim and Universal's counterclaim. Universal now appeals, asserting that Murray defaulted on the sales contract and that it disclaimed all warranties and was not a party to the service agreement. We affirm the trial court's judgment in all respects.

## Facts and Procedural History

On February 17, 2018, Murray entered into an installment contract with Universal to purchase a vehicle "as is" for $17,599.50. Murray made a down payment of $3539. Universal's James Myers arranged a financing agreement with a third-party lender, Credit Acceptance Corporation, pursuant to which Murray was obligated to make monthly payments of $337.93 beginning on March 17, 2018. The parties executed a "Right to Repossess," giving Universal a right to repossess the vehicle upon default and affording Murray ten days within which to redeem the repossessed vehicle. Defendant's Ex. C. Murray and Universal (by Myers) both signed a document titled, "Wynn's Plus Vehicle Service Contract/Application." Plaintiff's Ex. 13. The installment contract and bill of sale each list as a line item, "Service Contract: [$]1,535.00." Plaintiff's Exs. 1, 2.

[3]     Just hours after Murray purchased the vehicle, its engine began knocking and smoking. Murray called Universal, and Myers instructed him to take the vehicle to Indiana Auto Body & Service (Indiana Auto) for repairs and told him that Universal would cover the cost of the engine repair. Two days later, as Murray was driving his vehicle to Indiana Auto for the repair, the engine completely failed, and he had the vehicle towed. Indiana Auto replaced the engine, and Universal arranged payment. A few days after Murray got his vehicle back, he experienced trouble with the starter and took the vehicle to Indiana Auto. Murray personally paid the $200 charge for a new starter. A couple days later, the engine malfunctioned again, and Myers instructed Murray to have the vehicle serviced at Indiana Auto, which he did. Meanwhile, Universal stopped/withdrew its payment to Indiana Auto for the initial engine repair. When Murray attempted to pick up his vehicle, Indiana Auto employees informed him that they could not release it to him because it was subject to a mechanic's lien due to nonpayment for the initial repair. Tr. Vol. 2 at 43. Murray phoned Myers, who reminded him that he still had to make payments on the vehicle to avoid being in breach of the sales contract.

[4]     In a letter dated March 7, 2018, Universal informed Murray that it had repossessed his vehicle and would resell it if he did not exercise his right to redeem it by paying the full contract balance of $15,720 within ten days. Plaintiff's Ex. 6. In a notice dated that same day, Credit Acceptance notified Murray that it had reassigned his installment contract to Universal, closed his account, and canceled his vehicle service contract. Plaintiff's Ex. 12.

[5]     On March 12, 2018, Murray filed a small claims action against Universal seeking the return of his down payment as well as damages for the repair of his starter, towing charges, and pain and suffering in the form of lost wages. On September 12, 2018, the action was transferred to the trial court's plenary docket, and Universal filed a counterclaim seeking damages associated with Murray's alleged default, repossession and cleaning costs, and attorney's fees. At the February 2019 bench trial, both parties alleged breach of contract. Murray argued that Universal breached the service contract, and Universal argued that Murray owed damages for allegedly defaulting on the installment sales contract. The trial court issued a two-page order that included the following finding:

> Plaintiff purchased auto from Defendant "as is," and separately entered into a service contract/warranty with Defendant. When the auto failed to operate, repairs were not made or paid by Defendant. Plaintiff lost $3,733.00 in purchase payments, $146.00 in towing charges, $200.00 for a repair, and $150.00 in lost wages.

Appealed Order at 1. Based on this finding, the trial court concluded that Universal "breached the service contract/warranty contract by failing to repair" the vehicle and entered judgment in Murray's favor for $4229. *Id.* at 2. The court summarily ruled against Universal on its counterclaim. Universal filed a motion to correct error, which was deemed denied. Universal now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Universal has failed to establish prima facie error concerning its counterclaim.

We first address Universal's counterclaim, which seeks damages for Murray's alleged default for nonpayment on the installment contract. Because Universal did not prevail on its counterclaim below, it appeals from a negative judgment. A negative judgment is a judgment entered against the party who bore the burden of proof at trial. *Wilson v. Huff*, 60 N.E.3d 294, 298 (Ind. Ct. App. 2016). We will not reverse a negative judgment unless it is contrary to law. *Id*. On review, we consider the evidence and reasonable inferences in the light most favorable to the appellee. *Id*. "A party appealing a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court." *Id*. (citation omitted).

Murray has failed to file an appellee's brief. When an appellee fails to submit a brief, we will not undertake the burden of developing his arguments. *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). Rather, we apply a less stringent standard of review and will reverse if the appellant establishes prima facie error. *Id*. Prima facie error is error "at first sight, on first appearance, or on the face of it." *Solms v. Solms*, 982 N.E.2d 1, 2 (Ind. Ct. App. 2012).

Universal specifically asserts that Murray "refused to complete his first payment on the [vehicle] and was considered to be in default." *See* Appellant's Br. at 8 (citing Tr. Vol. 2 at 66). The cited portion of the trial transcript does not

support this assertion. Rather, it concerns the introduction of Plaintiff's Exhibit 12, a discharge of lien form dated March 7, 2018, followed by questions to Universal's manager Heather Padilla concerning the meaning and effect of such a form. Padilla explained that the creditor sends the form to the dealer so that the dealer can get the certificate of title back in the dealer's name for resale. When asked why Universal paid off Murray's account with Credit Acceptance, Padilla replied, "Because he defaulted on his contract and did not complete his first payment." Tr. Vol. 2 at 66. The record does not support this claim. The installment sales contract specifies that Murray's payment schedule will be "MONTHLY beginning March 17, 2018," and the payment due notice from Credit Acceptance, dated March 5, 2018, lists Murray's past due amount as "$0.00" and his current payment due date as "03/17/2018." Plaintiff's Exs. 2, 15. Both the repossession letter and the discharge of lien form are dated March 7, 2018, and both are based on an alleged default by Murray. Thus, instead of having to make a standard monthly payment on March 17, Murray was now facing the resale of his vehicle if he could not come up with $15,720 by March 17.

[9] In short, Murray had not defaulted on the sales contract when Universal repossessed his vehicle. One simply cannot be in default for nonpayment of a monthly bill that has not yet come due. Universal has failed to carry its burden of demonstrating prima facie error concerning its counterclaim.

## Section 2 – Universal has failed to demonstrate prima facie error concerning Murray's contract claim.

[10] We now address Universal's arguments concerning Murray's contract claim. Universal contends that it disclaimed all warranties[2] and did not owe Murray any contractual duty to service his vehicle. Interpretation and construction of contract provisions are questions of law. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 306 (Ind. Ct. App. 2014), *trans. denied*. We review each contract as a whole, ascertaining the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* (quoting *Fischer v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*).

[11] Here, the bill of sale reads in pertinent part, "*Unless Seller … enters into a service contract* within 90 days of this contract, this vehicle is being sold "AS IS – WITH ALL FAULTS." Plaintiff's Ex. 1 (emphasis added). The installment contract includes nearly identical language. Plaintiff's Ex. 2 ("*Unless we … enter into a service contract* within 90 days from the date of this contract, we make no warranties … on this vehicle") (emphasis added). This language expressly

---

[2] With respect to the disclaimer of warranties, Universal included the clear, conspicuous, and technical language necessary to disclaim implied warranties by stating that the vehicle was being sold "as is," without any warranties, and Murray opted not to have the vehicle inspected by a mechanic of his own choosing. Ind. Code § 26-1-2-316. Below, Murray did not focus his argument on the efficacy of the as-is language but rather on the service contract. We limit our discussion accordingly.

indicates that the existence of an enforceable service agreement will act as an exception to the "as-is" disclaimer of warranties.

[12] Universal maintains that the trial court erred in finding that it owed a contractual duty to Murray concerning any repairs. It relies on language in the delivery receipt, signed by Murray, acknowledging that the "vehicle is in acceptable working order," that he "release[d] the dealership from all responsibility … for future repairs needed or claims that may arise with the vehicle," that he had "been given the opportunity to test drive and research all information related to the vehicle," and "that it is FULLY my responsibility to maintain the vehicle at MY expense and I do not hold the dealer responsible in any manner to provide any service." Plaintiff's Ex. 5. We agree that the language is unambiguous, but it must be read in conjunction with the other documents executed as part of the sale. *See Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1268 (Ind. Ct. App. 2002) (where contract comprised four documents, court harmonized the documents to ascertain parties' intent), *trans. denied*. This includes the installment contract and bill of sale, with their references to circumstances in which Universal enters into a service agreement. Plaintiff's Exs. 1, 2.

[13] Universal claims that it was never a party to a service agreement with Murray. The service agreement at issue is the Wynn's Plus Service Contract, which was signed by Murray and by Myers on behalf of Universal as the "Selling Dealer." Plaintiff's Ex. 13. Signature notwithstanding, Universal points us to contract language defining "You, Your, Yours and I" as the customer, Murray, and

"Administrator, Our, Us, and We" as Wynn's Extended Care, Inc. *Id*. Based on this language, Universal submits that the only parties to the contract were Murray and Wynn's Extended Care. However, the contract also states, "This Contract is not valid unless signed by You [Murray] and an authorized representative of the Selling Dealer." *Id*. at 5. This means that the contract could not have been formed without the signature of Universal's representative. Moreover, Universal facilitated the collection of the $1535 fee from Murray. *See* Plaintiff's Exs. 1, 2 (retail installment contract and bill of sale, both listing as line item $1535 paid for "Service Contract").

[14] Moreover, Universal played a key role in dictating where Murray obtained service under the contact, essentially funneling him to its own preferred mechanic. Murray testified that it was Myers who directed him to take the vehicle "to Indiana Auto, which is where they get their cars fixed," and assured him that Universal would pay for it. Tr. Vol. 2 at 16. It was Universal's withdrawal of its payment to Indiana Auto that precipitated the placement of a mechanic's lien on the vehicle. In short, Universal facilitated the formation, fee collection, and execution of the service contract, and its withdrawal of payment to the repair shop of its own choosing was the catalyst for the mechanic's lien that ultimately resulted in the denial of the vehicle to Murray. This level of control, coupled with Myers's signature, supports the trial court's conclusion that Universal was a party to the service contract.

[15] Given Universal's level of control, we are unpersuaded by its arguments concerning Murray's alleged failure to honor certain technical prerequisites for

coverage under the service contract, e.g., calling certain phone numbers to determine whether a repair or breakdown is covered, notifying the repair facility concerning the service contract, and paying a $100 deductible. *See* Appellant's Br. at 13-14 (citing Plaintiff's Ex. 13). Murray simply did what Myers instructed him to do, which included taking the vehicle to the repair shop with whom Universal ordinarily dealt. If anything, Universal induced any de minimis breaches that Murray may have committed.

[16] Finally, with respect to the amount of the damage award, Universal does not specifically challenge the award of towing fees as consequential damages. Universal does challenge as contrary to law Murray's request for $150 for pain and suffering. *See* Plaintiff's Ex. 9 (ledger with line-item breakdown of Murray's asserted damages). The trial court addressed this line item during the trial, and Murray clarified that it was for lost wages during the weeks when his vehicle was in and out of the repair shop. In its written order, the trial court identified this portion of the damages as "$150.00 in lost wages." Appealed Order at 1. Lost wages may or may not be recoverable in a contract action, but Universal has not established that they are not recoverable here. The trial court did not err in including this in the damage award. We therefore affirm the trial court's judgment for $4229 in favor of Murray.

[17] Affirmed.

May, J., and Pyle, J., concur.